DECISION AND JUDGMENT ENTRY
This is an appeal from a Lawrence County Court of Common Pleas, Juvenile Division, judgment that granted the Lawrence County Department of Job and Family Services, Children Services Division (LCCS), permanent custody of Osiris Poke, born February 20, 2001. Connie Poke, Osiris' mother and appellant herein, appeals the judgment and assigns the following error for review and determination:
"THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN THE COURT DENIED THE MOTION OF VIRGINIA McABOY, A SUITABLE RELATIVE FOR CUSTODY OF THE POKE CHILD IN VIOLATION OF THE BEST INTEREST STANDARD."
Police conducted a drug raid at a South Point motel on July 27, 2004. During the raid, Damon Poke, Osiris' father, fled through a window and left Osiris at the motel with no family members present. LCCS sought permanent custody and alleged Osiris to be a neglected and dependant child.
On July 29, 2004, the trial court conducted a hearing and awarded Osiris' temporary custody to LCCS. LCCS could not locate Osiris' parents and neither parent attended the shelter care hearing. Virginia McAboy, Osiris' maternal grandmother, did attend the hearing and requested custody. The court informed McAboy that she could file a motion for custody and suggested that she contact LCCS and contact an attorney. The court also suggested that if McAboy had contact with Osiris' mother (appellant) or father, she tell them to contact LCCS.
LCCS was again unsuccessful in its efforts to serve the parents personally regarding Osiris' adjudication, but did provide service by publication. None of Osiris' family members attended the October 4, 2004 adjudication hearing, however.
LCCS social worker Chrissy Waddle testified that she spoke to McAboy in her attempts to locate Osiris' parents. Waddle also testified that in the course of her efforts to locate Osiris' parents, she learned that appellant was wanted by Lawrence County law enforcement authorities. Apparently, appellant failed to report for a two-year prison term for a drug trafficking conviction. Waddle also learned that Damon Poke resided in a Kentucky prison. Finally, Waddle testified that McAboy's home study disqualified McAboy as a suitable custodian for Osiris. At the conclusion of the hearing, the trial court adjudicated Osiris neglected and dependant.
Subsequently, Damon Poke contacted the trial court from a Kentucky prison and the court appointed counsel to represent him in this proceeding. Also, law enforcement officials arrested appellant in Kentucky, and transported her to an Ohio prison in late October or early November of 2004. The court also appointed counsel to represent appellant in this proceeding.
The court ordered that appellant be transported from the Ohio Reformatory for Women in order to attend the March 2, 2005 disposition hearing. Appellant did, in fact, along with counsel, attend the hearing. Damon Poke did not request to attend the hearing, but his attorney appeared on his behalf. McAboy also attended the hearing, but was not represented by counsel. At the hearing, appellant's attorney informed the court that McAboy wished to be considered as a dispositional option for Osiris, but acknowledged that no motion had been filed that requested that particular disposition.
At the hearing, Waddle testified that she discovered that the Fayette County, Kentucky children services agency had custody of Osiris in a dependency case until approximately four and one-half months before LCCS recovered him from the motel. Waddle testified that neither appellant nor Damon Poke contacted her to inquire about Osiris. Waddle further testified that she had regular contact with Osiris since LCCS took custody of him, and that Osiris did not ask about his parents. Waddle reported that Osiris is thriving in his foster home.
With regard to McAboy, Waddle testified that she informed her that she failed the home inspection. Waddle suggested to McAboy that she contact an attorney if she was not pleased with the home inspection results. Waddle explained that although McAboy's home was clean, McAboy is not a suitable custodian due to her previous involvement with LCCS and due to her mental health issues. In particular, Waddle testified that LCCS removed appellant from McAboy's home when appellant was a minor. Additionally, Waddle obtained a release to speak with McAboy's mental health counselor who expressed concern regarding McAboy's capability of caring for Osiris. The guardian ad litem also filed his initial report with the court and recommended that the court award LCCS permanent custody.
Contrary to the shelter care hearing transcript and Waddle's testimony, McAboy testified that no one suggested to her that she seek an attorney's assistance or file a custody motion. McAboy further testified that she had no idea that she needed to take some action, such as filing a custody motion, in order to obtain custody of Osiris. McAboy admitted, however, that she took steps to get legal representation a few years earlier when she obtained custody of her other grandson. In addition to not taking steps to obtain custody of Osiris, McAboy admitted that she had not visited or contacted Osiris since LCCS took custody of him. McAboy could not recall when she had last seen Osiris, claiming the time since his last visit was anywhere from six months to a year prior to the hearing.
McAboy also testified that she had lived in three different places in the past year and that she had been living with her fiancé for eight months. McAboy did not tell Waddle about her fiancé when Waddle conducted the home study, allegedly because she was not dating him at the time of the study. We note, however, that although the record does not contain the date of the home study, it appears that it occurred subsequent the shelter care hearing. We further note that seven months and four days elapsed between the shelter care hearing and McAboy's testimony. McAboy stated that her fiancé "probably" has a criminal record, but she did not know with certainty.
McAboy testified that she has a good relationship with appellant and believes that she was a good parent to her children. She admitted, however, that both her son and appellant are in prison for felony offenses. McAboy claimed that she spoke with appellant every week before appellant went to prison. McAboy admitted, however, that she has not had appellant's telephone number for several years and that she has not visited her in prison. McAboy also did not know that appellant lost temporary custody of Osiris when appellant lived in Kentucky. McAboy also testified that on the day of the shelter care hearing, she called appellant and informed her that Osiris was in LCCS custody. At the conclusion of McAboy's testimony, appellant's attorney filed a motion for McAboy to obtain custody of Osiris.
When appellant testified, she admitted that McAboy told her on the day of the shelter care hearing that LCCS had custody of Osiris. Appellant claimed that she believed that she could best take care of her son by remaining in Kentucky, because if she came to Ohio she would be sent to prison. Appellant admitted that she did not attempt to contact LCCS, an attorney, or Osiris. Appellant candidly admitted that she was "on the run" from law enforcement and justified her apparent lack of concern by stating that she would be unable to help Osiris from prison. She also testified that she sent money to McAboy for expenses, and that she kept her little boy in her heart.
The guardian ad litem's final recommendation noted that McAboy made no effort to challenge her failed home study or to request custody of Osiris until the March 2, 2005 hearing. The guardian ad litem concluded that McAboy is not an appropriate custodian for Osiris and recommended that the trial court grant LCCS permanent custody.
The trial court, after consideration of the evidence and the guardian ad litem's recommendation, concluded that (1) Osiris is dependent and neglected; (2) Osiris' placement in LCCS's permanent care and custody is in his best interest; (3) Osiris cannot be placed with one of his parents within a reasonable time; and (4) Osiris should not be placed with either parent. The court further found that McAboy had not demonstrated a level of commitment to Osiris that would cause the court to find that placing Osiris in her care would be in his best interest. Thus, the trial court granted LCCS's motion and placed Osiris in its permanent custody.
 I.
In her sole assignment of error, appellant contends that the trial court abused its discretion, and acted contrary to Osiris' best interest, by denying McAboy's motion for custody of Osiris.[1]
A permanent custody determination must be supported by clear and convincing evidence. In re Baby Girl Doe, 149 Ohio App.3d 717,778 N.E.2d 1053, 2002-Ohio-4470, ¶ 89; In re Hiatt (1993),86 Ohio App.3d 716, 621 N.E.2d 1222. An appellate court will not reverse a trial court's order terminating parental rights if, upon a review of the record, the record contains sufficient evidence to satisfy the clear and convincing standard. Baby Girl Doe at ¶ 89; In re Wise
(1994), 96 Ohio App.3d 619, 645 N.E.2d 812. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases, but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54.
An appellate court will not substitute its judgment for that of a trial court applying a "clear and convincing evidence" standard when some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578 syllabus. A trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey,
Montgomery App. No. 01CA0083, 2003-Ohio-608, ¶ 102, citing Miller v.Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, ___.
In the case sub judice, however, appellant does not contest the trial court's determination that Osiris cannot be placed with her or with Damon Poke within a reasonable period of time. Rather, she challenges the trial court's disposition and best interest determination, and in particular her desire that McAboy, Osiris' maternal grandmother, be awarded custody.
In In re Dyal, Hocking App. No. 01CA11, 2001-Ohio-2383, we addressed a similar situation. In Dyal the child's grandmother asserted that the trial court erred by not considering her as a suitable relative placement and custodian rather than a custody award to a children service agency. We wrote:
"In a dispositional hearing, a court considering a permanent custody motion possesses discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody. See R.C. 2151.353(A)(3); In re Evens (Feb 2, 2000), Summit App. No. 19489, unreported; In re Patterson (1999), 134 Ohio App.3d 119, 730 N.E.2d 439;In re Benavides (May 3, 2001), Cuyahoga App. No. 78204, unreported. We note that the statute does not require a juvenile court to consider relative placement before granting the motion for permanent custody. In other words, a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law. See In Re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, unreported. Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest. See Patterson, supra; Benavides, supra.
Generally, a trial court's discretion with respect to child custody issues should be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the lives of the participants. See, e.g., Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 674 N.E.2d 1159. Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement judgment unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable or capricious. See, generally, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. The underlying rationale of giving deference to the trial court's finding is based upon the premise that the trial court judge is best able view the witnesses and observe their demeanor, gestures, voice inflections, and to use those observations when weighing the testimony and evidence." Thus, when considering relative placement issues, juvenile courts are vested with discretion to determine which placement option may be in the child's best interest. See, also, In reKeaton Ross App. No. 04CA2785, 2788, 2004-Ohio-6210; In re P.P.
Montgomery App. No. 19582, 2003-Ohio-1051; In re Branstetter (May 18, 2001), Montgomery App. No. 18539; In re Dixon (Nov. 29, 1991), Lucas App. No. L-91-021 (the statutes do not require an award of custody to a relative rather than to an agency).
In the instant case the trial court determined that awarding LCCS permanent custody is in Osiris' best interest. Additionally, the court specifically found that McAboy's failure to demonstrate an adequate level of commitment to Osiris supported its conclusion that granting LCCS custody is in Osiris' best interest.
After a review of the record submitted on appeal, we find competent, credible evidence to support the trial court's judgment. Furthermore, we cannot characterize the trial court's judgment as arbitrary, unreasonable or capricious. In particular, with regard to Osiris' relationships with his parents, relatives, and foster parents, the evidence revealed that Osiris did not ask about his parents or comment upon their absence while in LCCS custody. McAboy's testimony about when she had last seen Osiris varied from six months to more than a year, but clearly did not reveal an established relationship. McAboy also testified that Osiris had not met the fiancé who lives with her. In contrast, Waddle's testimony revealed that Osiris has a well-established relationship with his foster family and is thriving in their care.
While Osiris is too young to express his wishes, the fact that he does not ask about his parents or McAboy is notable. Also, Osiris' custodial history includes involvement with a Kentucky children services agency just four months prior to LCCS's involvement.
Moreover, placement with McAboy would hardly be secure. McAboy's own testimony revealed that (1) she was unable to raise appellant without losing temporary custody to LCCS and (2) her fiancé "probably" has a criminal record, but she has not bothered to inquire into the nature of his past offenses. Additionally, McAboy's counselor does not believe that she is capable of raising Osiris. Finally, McAboy failed the home inspection and she made no effort to challenge or to remedy the failure.
Appellant contends that R.C. 2151.28(B)(1) supports her position that the trial court abused its discretion by refusing to place Osiris with McAboy. R.C. 2151.28(B)(1) requires that a court place a child with a relative who is willing to take the child and would be an appropriate custodian, but this provision concerns the temporary placement of a child awaiting a final disposition determination. Moreover, appellant's argument assumes that McAboy is an appropriate custodian. The evidence presented at both the adjudication and at final disposition indicates that McAboy is not an appropriate custodian.
Appellant also contends that this court must conclude that the trial court abused its discretion based on the decision in In re TravisChildren (1992), 80 Ohio App.3d 620, 609 N.E.2d 1356. In Travis, the Fifth District concluded that the trial court properly denied a grandmother's motion for custody when the grandmother did not express an interest in custody of the children until the dispositional hearing. Appellant argues that because McAboy made her desire for custody of Osiris known throughout the proceedings, this case is distinguishable fromTravis and the trial court should have granted McAboy's custody motion.
Appellant fails to recognize that the Travis court, like this court, based its determination on whether competent, credible evidence supported the trial court's determination of what is in the children's best interest. Just as the Travis grandmother's failure to request custody at an earlier time reflected a lack of commitment to her grandchildren, McAboy's failure in the instant case to take affirmative steps to secure representation, to successfully complete the home inspection, to visit with Osiris, or to file a custody motion prior to the disposition hearing demonstrates McAboy's lack of adequate commitment to Osiris. Although the facts of the two cases are not identical, the rationale is the same: "The trial court did not abuse its discretion in determining that it was in the best interest of the children not to give these children to the grandmother." Travis at 626.
Again, because we conclude that the record contains some competent, credible evidence to support the trial court's determination that Osiris' best interest demands that he be placed in LCCS's permanent custody, and that Osiris cannot be placed with McAboy or either parent within a reasonable time, we find that the trial court did not abuse its discretion awarding Osiris' permanent custody to LCCS.
Accordingly, based upon the foregoing reasons we hereby overrule appellant's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. McFarland, J.: Concur in Judgment Opinion.
[1] We note that McAboy did not appeal the trial court's denial of her motion. However, because appellant's interests are aligned with McAboy's, and because the denial of McAboy's motion prejudiced appellant, appellant possesses standing to challenge the court's denial of McAboy's motion. See In re Smith (1991), 77 Ohio App.3d 1, 601 N.E.2d 1. (An appealing party may complain of error committed against a nonappealing party when error is prejudicial to rights of appellant.) InIn re Hiatt (Mar. 16, 1993), 86 Ohio App.3d 716, 721-722,621 N.E.2d 1222, 1225-1226, we addressed this issue as follows:
"Appeal lies only on behalf of a party aggrieved by the final order appealed from; appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant. Ohio Domestic Violence Network v. Pub. Util. Comm. (1992),65 Ohio St.3d 438, 439, 605 N.E.2d 13, 13; Ohio Contract Carriers Assn.v. Pub. Util. Comm. (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus; In re Woodworth (Dec. 10, 1992), Cuyahoga App. No. 63038, unreported, 1992 WL 369233. An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. In re Smith (1991), 77 Ohio App.3d 1, 13,601 N.E.2d 45, 52; see, also, In re Johnson (Nov. 30, 1990), Lucas App. No. L-90-011, unreported, 1990 WL 187260, where the Sixth Appellate District notes two divergent standards on this issue. If the trial court had granted legal custody to one of appellant's relatives rather than permanent custody to ACCSA, appellant would have retained residual parental rights, privileges and responsibilities. R.C. 2151.011(B)(10) and (11). However, by granting ACCSA permanent custody of Tiffany and Amber, the trial court divested appellant of all parental rights, privileges, and obligations, including all residual rights and obligations. R.C. 2151.011(B)(12). Accordingly, appellant has standing to assert on appeal that the trial court erred in not granting legal custody to one of his relatives rather than permanent custody, since he was prejudiced to the extent that it affected his residual parental rights."
See, also, In re Evens (Feb. 2, 2000), Summitt App. No. 19489.