DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Vinton County Common Pleas Court, Juvenile Division, judgment that awarded Vinton County Department of Jobs and Family Services (JFS) permanent custody of Emily McCain, born October 15, 2000.
 {¶ 2} Appellant Darla McCain, the child's natural mother, raises the following assignment of error for review:
 "THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR PERMANENTE [SIC] CUSTODY OF EMILY MCCAIN FILED BY THE VINTON COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES."
 {¶ 3} On April 28, 2005, JFS filed a complaint that alleged *Page 2 
Emily to be a dependent and neglected child. The complaint alleged that on April 27, 2005, JFS received a call claiming that appellant was under the influence of drugs and unable to care for Emily. JFS stated that this incident represented the fifth time it received such a call and JFS thus requested temporary custody, which the trial court subsequently granted. On August 5, 2005, the trial court adjudicated Emily to be a dependent child.
 {¶ 4} On May 31, 2006, JFS requested permanent custody. On August 14, 2006, the guardian ad litem recommended that the court award JFS permanent custody. The guardian ad litem stated that appellant's "chronic drug abuse, her complete lack of a stable lifestyle and her inability to make sound decisions for herself and for her child placed [the child] at great risk of abuse and further neglect." The guardian ad litem further asserted that appellant's "addiction is so great that she is unable to focus on what is best for [the child] or for her other two children. Since the start of this case, [appellant] has not been able to make any progress toward being able to reunify with [the child]."
 {¶ 5} After hearing the evidence and arguments regarding JFS's permanent custody motion, the trial court granted the JFS's request. The court found that Emily was placed in JFS's custody on April 28, 2005, and has been in its custody ever since. Thus, the court found that Emily had been in JFS's temporary custody for twelve or more months of a twenty-two month period and a permanent custody award would serve the child's best interests. The court found: *Page 3 
 "[Appellant's] interaction and interrelationship with Emily can be described as minimal at best. She left Emily with relatives in different cities and states; she disappeared when she was pregnant with Joshua from August 2005 until spring 2006 or early summer 2006. These visits totaled 3-4 times. [Appellant] stopped visiting in the summer 2005 after she tested positive for drugs. She also was afforded a case plan and many services, including but not limited to substance abuse programs, [of] which she did not avail herself. She likewise has contributed no support. She does not have custody of her other two children and there is no evidence of any interaction between those children * * * and Emily McCain.
 Sheryl Wickiser [appellant's mother] has visited Emily in the spring and summer 2006 and Emily did live with her in Florida early in her life for a year. However, when [appellant] was pregnant with Joshua, Ms. Wickiser arranged no meetings/visitation [with] herself or [appellant] with VCDJFS even though she knew Emily was in foster care nor did she inform them of [appellant's] residence or phone until after she obtained custody of [appellant's] son in Franklin County. Thus, the interrelationship between Ms. Wickiser and Emily is clearly secondary to that of Ms. Wickiser, [appellant]'s and Joshua's relationship.
 Emily and Aric Bledsoe, the foster care providers, have provided excellent, consistent and loving care for [the child]. They have attended to her medical, educational and extracurricular needs and have developed a strong bond with her as a family unit."
Regarding the child's wishes, the court stated:
 "As Emily is only five years old, she cannot verbally express her wishes. Nonetheless, she knows only one stable home, the one she has lived in since 4-28-05, namely, the home of the Bledsoe's."
With respect to the child's custodial history, the court observed:
 "* * * Emily has been in the custody of VCDJFS for more than 12 months of a 22 consecutive month period since 4-28-05. Also, when relatives were used as placement, she was constantly moving around providing little stability in her life."
Regarding the child's need for a legally secure permanent placement, the court stated: *Page 4 
 "There is no evidence that [the father] can provide a legally secure placement nor can [appellant]. Despite trying, Sheryl Wickiser had trouble providing care for [appellant] when she was a child, with allegations of sexual abuse by her stepfather and because of the drug problems that two of her children had. Emily can be provided with a legally secure placement by having VCDJFS facilitating an adoption by the Bledsoes."
 {¶ 6} The trial court further noted that: (1) appellant failed to visit, contact, or support the child for at least ninety days; (2) appellant "has a severe substance abuse problem and has declined opportunities for treatment despite being afforded opportunities for the same. The risk of her abusing alcohol and/or drugs in the future is high"; (3) appellant "has failed in efforts to maintain stability, stay off drugs, stay out of jail, exercise visitation, obtain suitable housing, work towards reunification and maintain employment. Furthermore, [the child] has become physically and emotionally dependent on Emily and Aric Bledsoe and has become fully integrated into their family." The court determined that it need not favor placing Emily with Wickiser. Instead, it determined that the child's best interests would be served by awarding JFS permanent custody so that her placement with the foster family could continue and an adoption pursued. This appeal followed.
 {¶ 7} In her sole assignment of error, appellant asserts that the trial court erred by granting JFS permanent custody. She argues that the court failed to consider "all the relevant testimony in regarding Sheryl Wickiser when it determined that it was in the best interest of the child for VCDJFS to be granted *Page 5 
permanent custody." Appellant contends that Wickiser was a viable relative placement and that the court should have granted Wickiser custody.
 A APPELLATE STANDARD OF REVIEW {¶ 8} Initially, we note that an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to *Page 6 
the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v.Flickinger (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also,In re Christian, Athens App. No. 04CA10, 2004-Ohio-3146.
 B STANDARD FOR GRANTING PERMANENT CUSTODY {¶ 9} A trial court may not grant a permanent custody request absent clear and convincing evidence to support the request. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
 "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74. In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74.
 C PERMANENT CUSTODY PRINCIPLES {¶ 10} A parent has a "fundamental liberty interest" in the *Page 7 
care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599;In re Murray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169. A parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106,391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 11} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 12} Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *;
 * * *
 (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety. *Page 8 
R.C. 2151.01.
 D PERMANENT CUSTODY FRAMEWORK {¶ 13} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.
 {¶ 14} For purposes of our decision, we wish to first address the issue whether the child's best interest will be served by granting permanent custody to a children services agency.
 1 *Page 9 BEST INTERESTS {¶ 15} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[1] *Page 10 
 {¶ 16} In the case at bar, ample competent and credible evidence supports the trial court's finding that permanent custody serves the child's best interests. The trial court carefully analyzed the best interest factors and we agree with *Page 11 
its analysis. With respect to the first factor, the child's interrelationships and interactions, the record shows that the child shares a loving relationship with her foster parents and has become integrated into the family. Appellant and the child's Grandmother Wickiser undoubtedly love the child. However, appellant's drug abuse has interfered with her abilities to properly interact with the child and to develop a healthy relationship with the child. Also, some testimony exists that the child did not feel a strong bond to her Grandmother Wickiser.
Caseworker Tischa McFerren stated that on one occasion, the child looked puzzled when she saw Wickiser and was not entirely certain who she was. McFerren stated that the child, on this occasion, did not recognize Wickiser as anyone special. Additionally, the court found that Wickiser did not arrange visits with the child when appellant was pregnant and that she did not make her relationship with the child a priority, but instead focused on her relationship with appellant and the newborn. Although Wickiser presented contrary testimony, the choice between credible witnesses rests with the trial court. Especially in sensitive matters of child custody, we are ill-equipped to second-guess a trial court's credibility determinations. Because a trial court has the opportunity to observe a witness's demeanor and characteristics, the trial court obviously has the better ability to evaluate witness credibility and to determine which persons are best suited to care for the child. While we do not doubt Wickiser's love for her grandchild *Page 12 
or her desire to have custody of the child, we cannot state that the trial court's credibility determinations lacked merit.
 {¶ 17} With respect to the second factor, the child's wishes, the record shows that the child did not directly express her wishes to the court. The guardian ad litem, however, recommended that the court award JFS permanent custody.
 {¶ 18} Regarding the third factor, the child's custodial history, the evidence shows that the child has been in her foster home since April of 2005. Before that, she did not live in one stable home with appellant. Instead, the child was shuffled among relative placements.
 {¶ 19} With respect to the fourth factor, the child's need for a legally secure permanent placement and whether it can be achieved without granting permanent custody, the record reveals that appellant is unable to provide a legally secure permanent placement for the child. Appellant apparently does not challenge this fact but instead asserts that the trial court should have awarded custody to her mother, Wickiser. We disagree.
 {¶ 20} In a dispositional hearing, a court considering a permanent custody motion possesses the discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody. See R.C. 2151.353(A)(3); In re Evans (Feb 2, 2000), Summit App. No. 19489; In re Patterson (1999), 134 Ohio App.3d 119, 730 N.E.2d 439;In re Benavides (May 3, 2001), Cuyahoga App. No. 78204. It is important to note that the statute does not require a juvenile court to consider *Page 13 
relative placement before granting the motion for permanent custody. SeeIn re Perry, supra; In the Matter of Knight (Mar. 22, 2000), Lorain App. Nos. 98CA7258 and 98CA7266. In other words, a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. Id. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. See In re Jefferson (Oct. 25, 2000), Summit App. Nos. 20092 and 20110;In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. See Patterson; Benavides. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In re Adoption ofRidenour (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. See In re Poke, Lawrence App. No. 05CA15,2005-Ohio-5226; In re Keaton, Ross App. Nos. 04CA2785 and 04CA2788,2004-Ohio-6210; see, also, In re Lewis, Athens App. No. 01CA20, 2001-Ohio-2618; In re Wilkenson, (Oct 12, 2001), Hamilton App. No. C-010402, C-010408.
 {¶ 21} In the case sub judice, doubt remains as to whether *Page 14 
Wickiser would be able to provide a legally secure, safe, and stable environment. Wickiser helped appellant evade JFS so that JFS would not seek custody of her newborn. JFS caseworkers also expressed concern that Wickiser would allow appellant to have contact with the child. Some evidence exists that Wickiser failed to recognize that her husband sexually abused appellant. The totality of the circumstances reveals that experimenting with Emily's welfare by placing her in Wickiser's custody is not in her best interests. Rather, maintaining her current placement with the foster parents would further her best interests. Consequently, we disagree with appellant that the trial court should have placed the child with Wickiser.
 2 R.C. 2151.414(B)(1) {¶ 22} We now consider the trial court's finding that R.C.2151.414(B)(1)(d) applies to the case sub judice. Pursuant to the statute's plain language, when a child has been in an agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See, e.g ., In re Billingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205. Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the child's best interests. A trial court *Page 15 
need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time.
 {¶ 23} In interpreting R.C. 2151.414(B)(1), the Ohio Supreme Court has held that the child must have been in the custody of the agency for at least twelve of the previous twenty-two months before the filing of the permanent custody motion in order for the trial court to grant permanent custody based on R.C. 2151.414(B)(1)(d) grounds. In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, at ¶ 26. "In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id.
 {¶ 24} In the case sub judice, we do not believe that the record supports the trial court's finding that R.C. 2151.414(B)(1)(d) applies. The child was removed from the home on April 28, 2005 and the court adjudicated the child dependent on August 5, 2005. For purposes of R.C.2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [neglected, dependent, abused, or delinquent] * * * or the date that is sixty days after the removal of the child from the home." R.C.2151.414(B)(1). Sixty days following Emily's removal would be June 28, 2005. Thus, when JFS filed the permanent custody motion in May of 2006, the child had not continuously been in JFS's custody for twelve months of a consecutive twenty-two month *Page 16 
period. See In re C.W. (stating that the child must have been in children services agency's custody for twelve months at the time children services agency files permanent custody motion).
 {¶ 25} Although appellant has not challenged the trial court's R.C.2151.414(B)(1)(d) finding, we choose to do so sua sponte and recognize it as plain error. But, see, In re Roberts, Guernsey App. No. 04CA29,2005-Ohio-2843 (declining to sua sponte recognize court's "12 of 22" finding as plain error when mother died during pendency of appeal, thus rendering any return of the child to mother a moot issue). We fully recognize that the doctrine of plain error is "not favored" in civil cases and is "applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. However, because the termination of parental rights is "the family law equivalent of the death penalty," In re Hayes (1997), 79 Ohio St.3d 46, 48,679 N.E.2d 680, we believe that a trial court's failure to enter an appropriate R.C. 2151.414(B)(1) finding constitutes plain error. Trial courts have the mandatory duty to fully comply with the permanent custody statutes and may not award permanent custody without making the requisite findings. In the case sub judice because the trial court's finding regarding R.C. 2151.414(B)(1)(d) is erroneous, we are *Page 17 
left without an R.C. 2151.414(B)(1) factor. As such, to affirm the permanent custody award solely on this basis would be improper. Therefore, we remand the matter to the trial court so that it may consider whether other R.C. 2151.414(B)(1) factors justify a permanent custody award. See In re. A.C., Summit App. No. 23090, 2006-Ohio-3337;In re Arnold, Allen App. Nos. 1-04-71, 1-04-72, and 1-04-73,2005-Ohio-1418. See, generally, In re Hurlow (Nov. 6, 1997), Gallia App. Nos. 97CA8 and 97CA10. We recognize that other evidence may indeed exist to support other grounds for the permanent custody request. We, however, do not believe that an appellate court should make an initial determination in this regard. This is a matter that the trial court, as the trier of fact, must first decide. We further hasten to add that our decision today should not be construed in any manner as a comment on the underlying merits of this case.[2]
 {¶ 26} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignment of error as it relates to the court's best interests determination and hereby reverse and remand the trial court's judgment so that it can enter an appropriate R.C. 2151.414(B)(1) finding.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. *Page 18 
[1] R.C. 2151.414(E)(7) to (11) provide as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412
[2151.41.2] of the Revised Code
 (10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child. that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
[2] We further note that not only do we very rarely invoke the plain error doctrine, it is even more rare that we will decide a matter on the plain error theory without first seeking the parties' input through supplemental briefs. However, because the issue in this particular case is clear and a waiver theory is in all likelihood the only arguable point, we believe it is proper to expedite the resolution of this matter and proceed as indicated in the opinion.