DECISION AND JUDGMENT ENTRY
{¶ 1} Nathan Robertson, father of T.F., appeals the judgment of the Pickaway County Court of Common Pleas, Juvenile Division, which granted permanent custody of T.F. to Pickaway County Job and Family Services ("FS"). On appeal, Robertson contends that the trial court denied him his due process rights when it determined the permanent custody action without his presence and without appointing an attorney to represent him. Because the record shows that Robertson was properly served with a notice of all the hearings and never requested transportation to the same, and because Robertson was provided notice of his right to an attorney during the proceedings, but never availed himself of that right, we disagree. Robertson further contends that the trial court's findings involving R.C. 2151.414(B)(1)(a), best interest, and reasonable *Page 2 
efforts were against the manifest weight of the evidence. Because competent, credible evidence supports the trial court's findings, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Robertson sired T.F.; Melinda Fowler (hereinafter "Mother") gave birth to T.F. on June 2, 2004. Mother maintained custody of T.F. On January 13, 2006, Pickaway County Jobs Family Services (hereinafter "FS") filed a complaint in juvenile court alleging that T.F. was a neglected and dependent child. FS alleged that Mother was evicted from her home, and, afterwards, she left T.F. with different caregivers without adequate provisions, diapers, and sometimes without medication. FS sought temporary custody. Eventually, FS learned that Robertson was in prison.
 {¶ 3} The case proceeded to an adjudication hearing where the magistrate adjudicated T.F. a dependent child. At the final disposition hearing, the magistrate awarded temporary custody of T.F., effective March 17, 2006, to Helen Greeno, T.F.'s grandmother, with FS having protective supervision. The court adopted the magistrate's findings and orders, including the finding that Robertson had no contact with T.F. and was in prison. Robertson did not appear at any of the hearings.
 {¶ 4} Later, FS alleged that Helen Greeno could no longer care for T.F. The magistrate held a shelter care hearing on June 12, 2006, and ordered temporary custody of T.F. to FS. The court adopted the magistrate's order on June 16, 2006. *Page 3 
 {¶ 5} On June 26, 2006, FS filed a motion for permanent custody. On July
11, 2006, Mother permanently surrendered her parental rights to T.F.
 {¶ 6} On September 17, 2006, the court held a hearing on the motion.
Robertson again did not appear. In its entry, the court stated, "[Robertson] was duly served with the Motion for Permanent Custody and Notice of this hearing by certified mail on June 29, 2007. Father did not appear nor did he seek appointment of counsel on his behalf. He did not seek an order for transportation to the court for the permanent custody hearing." The court further stated, "[Robertson] sent a letter to the court on June 22, 2006 expressing a desire to gain custody of his son upon discharge [from incarceration], [but] no further communications with the court or the child have occurred since that time." The court additionally found, inter alia, "by clear and convincing [evidence] that reasonable efforts have been made to eliminate the necessity of the removal of [the child] from the custody of his parents * * *" and that Robertson's "repeated and frequent incarceration prevents him from providing care for [the child]." Finally, the court ordered that T.F. be committed to the permanent custody of FS.
 {¶ 7} Robertson appeals the trial court's judgment and asserts the following four assignments of error: I. "THE TRIAL COURT ERRED IN FINDING THAT THE CHILD COULD NOT BE PLACED WITH ONE OF THE CHILD'S PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH EITHER PARENT." II. "THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPLIED TO THE STATES BY THE *Page 4 FOURTEENTH AMENDMENT WHEN THE COURT PROCEEDED TO HEARING WITHOUT APPELLANT PRESENT AND WITHOUT AN ATTORNEY BEING APPOINTED TO REPRESENT APPELLANT." III. "THE COURT ERRED WHEN IT FOUND THAT ASSIGNMENT OF PERMANENT CUSTODY AND TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS IN THE BEST INTEREST OF THE CHILD BY CLEAR AND CONVINCING EVIDENCE." And, IV. "PICKAWAY COUNTY JOB AND FAMILY SERVICES DID NOT MAKE REASONABLE EFFORTS TO REUNITE THE FAMILY AND ACTED IN BAD FAITH."
 II. {¶ 8} "A public or private child-placement agency may file a motion under R.C. 2151.413(A) to request permanent custody of a child after a court has committed the child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2)." In re C.F., 113 Ohio St.3d 73,2007-Ohio-1104, ¶ 22. Once a R.C. 2151.413(A) motion is filed, the court must follow R.C. 2151.414. Id. "[T]he court shall schedule a hearing and give notice of the filing of the motion and of the hearing[.]" R.C.2151.414(A)(1).
 {¶ 9} A trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1) applies; and (2) it is in the child's best interest. R.C. 2151.414(B)(1); In reMcCain, Vinton App. No. 06CA654, 2007-Ohio-1429, ¶ 13. In addition, "except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must *Page 5 
do so at the hearing on a motion for permanent custody. However, the specific requirement to make reasonable efforts that is set forth in R.C. 2151.419(A)(1) does not apply in a R.C. 2151.413 motion for permanent custody." In re C.F. at ¶ 4.
 III. {¶ 10} We address Robertson's second assignment of error out of order. Robertson contends that the court denied him his due process rights when it determined the permanent custody action without his presence and without appointing an attorney to represent him. We undertake a de novo review to answer these legal questions. See, e.g., Yazdani-Isfehani v.Yazdani-Isfehani, 170 Ohio App.3d 1, 2006-Ohio-7105, ¶ 20.
 {¶ 11} A parent's "interest in the care, custody, and control of their children `is perhaps the oldest of the fundamental liberty interests * * *.'" In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 8, citingTroxel v. Granville (2000), 530 U.S. 57. The Supreme Court of Ohio "has long held that `parents who are suitable parents have a `paramount' right to the custody of their minor children.'" Id. at ¶ 10, citingIn re Murray (1990), 52 Ohio St.3d 155; In re Perales (1977),52 Ohio St.2d 89; Clark v. Bayer (1877), 32 Ohio St. 299. Further, "[permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" Id., citing In reHayes (1997), 79 Ohio St.3d 46; In re Smith (1991), 77 Ohio App.3d 1. As such, "parents `must be afforded every procedural and substantive protection the law allows.'" Id., citing In re Hayes, supra. "Consequently, when the State seeks to terminate parental *Page 6 
custody, parents are entitled to due process guarantees under theFourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself." In reD.P., Cuyahoga App. Nos. 86271, 86272, 2006-Ohio-937, ¶ 17, citingSantosky v. Kramer (1892), 455 U.S. 745. "Ohio has incorporated these due process requirements into the statutes and rules governing juvenile adjudications and dispositions." In re DP. at ¶ 18.
 {¶ 12} Here, the record shows that FS served Robertson with the complaint alleging T.F. to be a neglected and dependent child and requesting a grant of temporary custody by "posting and mail" as provided for in Juv.R. 16. Further, Robertson received service of the motion for permanent custody and notice of hearing at the Noble Correctional Institution by certified mail on June 29, 2007. An agent of Robertson at the prison apparently signed the certified mail receipt. So, such service was properly made on Robertson. See Leman v.Fryman, Hamilton App. No. C-010056, 2002-Ohio-191. Further, the scheduling entry (for the permanent custody hearing) filed on July 13, 2007 indicates that a copy was sent to Robertson.
 {¶ 13} Robertson maintains, however, that the trial court erred by failing to transport him from prison to any of the proceedings before the court. However, the record does not indicate that Robertson ever requested transportation to any of the hearings. We find that the trial court did not violate Robertson's due process right to be present at the hearings and to be heard because Robertson *Page 7 
failed to seek transportation after he was properly served with all the notices of the hearings. See In re DP. at ¶¶ 21-24.
 {¶ 14} Robertson further claims that he had a right to an attorney, and that the court failed to appoint an attorney to represent him.
 {¶ 15} Ohio courts hold that where a parent is provided notice of his or her "right to counsel, but fails to pursue it, [the parent] has not been denied [the] statutory right to counsel." In re Williams, Franklin App. No. 03AP-1007, 2003-Ohio-678, ¶ 13, citing In re Careuthers (May 2, 2001), Summit App. No. 20272; In re Ramsey Children (1995),102 Ohio App.3d 168, 169-170.
 {¶ 16} Here, the summons served via posting specifically stated:
 1. You are entitled to a lawyer in all proceedings in juvenile court. The court will appoint a lawyer or designate a county public defender or joint county public defender to provide legal representation if you cannot afford a lawyer and meet certain requirements.
 2. Elieen Kester who may be reached at telephone number (740) 474-3117 Monday through Friday between the hours of 8:00 AM and 4:00 PM, is the employee designated by the court to arrange for the prompt appointment of counsel for indigent persons. If you wish to be represented by a lawyer in this proceeding but believe you cannot afford one, you should contact this person as soon as possi[b]le.
Therefore, Robertson was provided notice of his right to an attorney during the proceedings, but he never availed himself of that right. Consequently, we find that Robertson was not denied his due process right to counsel.
 {¶ 17} Accordingly, we overrule Robertson's second assignment of error.
 IV. *Page 8 {¶ 18} Robertson contends in his first, third, and fourth assignments of error that the trial court erred in its findings involving R.C.2151.414(B)(1)(a), the "best interest" of the child, and FS's "reasonable efforts" to reunite him with his child. The essence of Robertson's claims is that the court's findings are against the manifest weight of the evidence.
 {¶ 19} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725. The Supreme Court of Ohio has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104.
 {¶ 20} We will not reverse the judgment of the trial court when some competent, credible evidence supports the trial court's findings. In reMarano, Athens App. No. 04CA30, 2004-Ohio-6826, ¶ 12. As such, we must determine if competent, credible evidence supports the trial court's R.C. 2151.414(B)(1), best interest, and reasonable efforts findings.
 A. R.C. 2151.414(B)(1) {¶ 21} Robertson contends in his first assignment of error that the trial court erred by finding that T.F. could not be placed with either parent within a reasonable time, or that T.F. should not be placed with either parent as contained *Page 9 
in R.C. 2151.414(B)(1)(a). For the reasons that follow, we do not address this assignment of error.
 {¶ 22} As we stated earlier, a trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C.2151.414(B)(1) applies; and (2) it is in the child's best interest.In re McCain, supra, at ¶ 13. The four conditions in R.C. 2151.414(B)(1) are:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 23} Here, the trial court granted FS's motion for permanent custody after it found by clear and convincing evidence that: (1) the condition in R.C. 2151.414(B)(1)(d) applied; and (2) it is in the child's best interest. The trial court further found that condition R.C.2151.414(B)(1)(a) applied. However, Robertson only complains about the R.C. 2151.414(B)(1)(a) finding, not the R.C. 2151.414(B)(1)(d) finding. A juvenile court only needs to find one of the four conditions in R.C.2151.414(B)(1) before it grants a motion for permanent custody. This court has held that when R.C. 2151.414(B)(1)(d) applies, "a trial court need not find that the child cannot or should not be placed with either *Page 10 
parent within a reasonable time." In re Berkley, Pickaway App. No. 04CA12, 04CA13, 04CA14, 2004-Ohio-4797, ¶ 61, citing In reBillingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344;In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In reDyal (Aug. 9, 2001), Hocking App. No. 01CA11. The R.C. 2151.414(B)(1)(a) analysis is not necessary because of the plain wording of the statute. Id. Therefore, we do not need to consider the trial court's extraneous R.C. 2151.414(B)(1)(a) finding. Its decision was proper based solely upon R.C. 2151.414(B)(1)(d).
 {¶ 24} Accordingly, we overrule Robertson's first assignment of error.
 B. Best interest {¶ 25} Robertson contends in his third assignment of error that the trial court erred in determining that permanent custody was in the best interest of the child.
 {¶ 26} R.C. 2151.414(D) provides that "[i]n determining the best interest of a child at a hearing * * *, the court shall consider all relevant factors * * *." Those factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; *Page 11 
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 27} Here, the court found that T.F. "has an excellent relationship with his foster parents." The evidence shows that Robertson was not involved in T.F.'s life and that T.F. was developing remarkably in the care of his current foster caregivers. Further, the court found that T.F. had "made tremendous physical and mental strides since being place[d] in foster care[.]" The court stated,
 [A]fter being placed in foster care with [FS], the child has significantly matured and thrived. Upon initial placement with foster care, the child had serious ear infections and delays in communication skills. After placement in foster care, tubes were placed in his ears in August, 2006 and his current physical condition is very good. Through services provided by the "Help Me Grow" program and the commitment and dedication of the foster parents, according to the testimony of the "Help Me Grow" staff member, [T.F.] has made a complete turnaround and has graduated at age-level. This is in complete contrast to his entrance into the program where it was determined that he was untestable.
The court also found that, in foster care, T.F. was able to remain with his brother, "with whom he enjoys a close sibling relationship."
 {¶ 28} The court further considered the custodial history of T.F., including the fact that, during the course of T.F.'s life, Mother had "moved from home to home with the child and on numerous occasions would drop off the child to various friends and family leaving no medications or diapers." The court noted that FS became involved with the child in January 2006 and discussed T.F.'s custody situation since FS's involvement in the child's life. In addition, the court determined that T.F. was "in need of a legally secure permanent placement due to his need for close custodial supervision which cannot be achieved without a grant of permanent custody." *Page 12 
 {¶ 29} The record supports the trial court's summary of the evidence. Thus, we find that competent, credible evidence supports the trial court's "best interest" finding, i.e., that permanent custody was in the best interest of the child. {¶ 30} Accordingly, we overrule Robertson's third assignment of error.
 C. Reasonable Efforts {¶ 31} Robertson contends in his fourth assignment of error that FS failed to make reasonable efforts to reunite the family and acted in bad faith. For the reasons that follow, we find that the court was not required to make a "reasonable efforts" finding.
 {¶ 32} As we stated earlier, even though a "reasonable efforts" finding under R.C. 2151.419(A)(1) does not apply to a motion for permanent custody filed under R.C. 2151.413, "except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must do so at the hearing on a motion for permanent custody." In re C.F., supra, at ¶ 4.
 {¶ 33} Here, FS became involved in T.F.'s life in January 2006. The caseworker from FS admitted that FS never placed Robertson on any case plan because of Robertson's incarceration. The case worker did not know where Robertson lived at the time but learned at some point before June 12, 2006 that he was incarcerated and left a message for Robertson the day before the shelter care hearing in June 2006. Between August 2006 and the time of the permanent custody hearings, the caseworker had at least seven conversations with *Page 13 
Robertson explaining the nature of the proceedings, the fact that Robertson could obtain counsel, and the likelihood that FS would seek permanent custody of the child. The caseworker stated that Robertson never made any effort that suggested that he wished to participate in T.F's life. Instead, Robertson requested that the caseworker contact his parents to determine if they had any desire to care for the child. Neither of Robertson's parents expressed any such desire. Therefore, based on the above record, we find that competent, credible evidence supports the trial court's finding that FS made reasonable efforts to reunite Robertson with his child.
 {¶ 34} In addition, courts have recognized an implied exception to the "reasonable efforts" finding "when case planning efforts would be futile." In re Keaton, Ross App. Nos. 04CA2785, 04CA2788,2004-Ohio-6210, ¶ 69, citing In re Harmon (Sept. 25, 2000), Scioto App. No. 00CA2693; In re Crosten (Mar. 21, 1996), Athens App. No. 95CA1692. However, "trial courts should be cautious in finding that reasonable efforts would have been futile * * *." Id., citing In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49; see, also, In re T.K., Wayne App. No. 03CA6, 2003-Ohio-2634. Thus, "[w]hile a children services agency generally should make a good faith effort to reunite a dependent child with his biological parent, a reunification plan is not required where it would be futile to implement one." In re Meadows, Scioto App. No. 05CA3009, 2005-Ohio-5018, ¶ 16, citing In re Leitwein, Hocking App. No. 03CA18, 2004-Ohio-1296, ¶ 30; Elmer v. Lucas Cty. Children Serv.Bd. (1987), 36 Ohio App.3d 241, 244. *Page 14 
 {¶ 35} In In re Norris (Dec. 12, 2000), Athens App. Nos. 00CA38, 00CA41, 2000-Ohio-2038, 2000-Ohio-2039, this court found that where a father is incarcerated for an extended period of time, shows no interest in his son, fails to communicate with his son and has a criminal history, among other factors, a finding that reasonable efforts to reunite the child with the child's father "would be futile is supported by competent and credible evidence." See, also, In re ChestnutChildren, Guernsey App. No. 05CA39, 2006-Ohio-684, ¶ 25 (finding that where mother was incarcerated and, as a result, failed to communicate with her children, among other factors, supported a finding that reasonable efforts at reunification were futile).
 {¶ 36} Here, Robertson was incarcerated during the entire pendency of this action. FS did not know his exact whereabouts until June of 2006 when a FS's caseworker left a message for Robertson concerning the shelter care hearing. Once after FS left a message with Robertson in June 2006, he sent a letter to the court expressing his desire to father the child. After August 2006, Robertson spoke with FS at least seven times. This evidence shows that FS did not completely ignore Robertson. However, despite FS's communication with Robertson, he never made any effort to add his name to a case plan, appear in the pending custody action or make any effort to be a part of T.F.'s life. Therefore, we find that the above record is competent, credible evidence, which supports a conclusion that any efforts by FS at reunification would have been futile. Consequently, any failure by FS to make reasonable efforts at reunifying the family was not error. *Page 15 
 {¶ 37} Accordingly, we overrule Robertson's fourth assignment of error. Having overruled all four of Robertson's assignments of error, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 16 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1