JOURNAL ENTRY AND OPINION
{¶ 1} Appellant T.P.[1] ("Mother") appeals from a decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her children, D.P., T.P., and C.P., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the following reasons, we affirm.
 {¶ 2} The record supplied to us on appeal reveals the following: On August 21, 2003, CCDCFS filed a complaint alleging that C.P. was neglected. On September 16, 2003, CCDCFS filed a complaint alleging that D.P. and T.P. were neglected. Specifically, the complaints alleged that the home was in deplorable condition, that the mother needed a psychological examination, and that the mother was allowing strange men into the house, all of which interfered with her ability to care for the children.
 {¶ 3} On December 17, 2003, the children were adjudicated neglected and placed into the temporary custody of CCDCFS. A case plan was instituted for purposes of pursuing reunification of the children with their mother.
 {¶ 4} On November 4, 2004, CCDCFS filed a motion to modify the temporary custody of the children to permanent custody.
 {¶ 5} On February 22, 2005, trial began. The mother, though properly served, did not appear for trial because she was in jail. The father of C.P. also failed to appear despite being duly served. The father of D.P. and T.P. is deceased.
 {¶ 6} Testimony was heard from CCDCFS social worker Sheila Thompson. She testified that she became involved with the mother and the children in March 2002 and again in 2003 after a referral that the children were living in deplorable conditions and that the mother was doing drugs and prostituting herself. She testified that she developed a case plan for the mother, which included obtaining appropriate housing, substance abuse counseling, parenting classes, and mental health classes. She testified that the mother failed to complete any of the objectives on the case plan. She also testified that the mother had not visited with the children since November 2004. Finally, she testified that the children are doing very well in their placements and that the paternal grandmother is interested in adopting C.P. and a maternal cousin is interested in adopting D.P. and T.P.
 {¶ 7} On February 23, 2005, the guardian ad litem ("GAL") filed a written report recommending that the children be placed in the permanent custody of CCDCFS.
 {¶ 8} On March 17, 2005, the court granted CCDCFS' motion for permanent custody. Mother timely appealed from this order.
 {¶ 9} On July 25, 2005, this Court remanded the mother's appeal for consideration of her Civ.R. 60(B) motion filed in the trial court. On August 30, 2005, the trial court held a hearing on this motion. During this hearing, the mother acknowledged that she had received a summons for the February 22, 2005 permanent custody hearing. She testified that she contacted her social worker and the court with a request to be transported from prison to the permanent custody hearing; however, there is no evidence in the record that such a request such a request was made. The mother testified that she recently finished parenting classes, attended drug treatment and was sober, and had secured employment. She admitted at the time of the permanent custody hearing, in February 2005, she had not remedied the conditions that caused the children to be placed outside the home.
 {¶ 10} On September 8, 2005, the court denied and dismissed the mother's Civ.R. 60(B) motion stating in pertinent part:
 {¶ 11} "This Honorable Court finds that mother was properly served a copy of summons and motion to modify temporary custody to permanent custody on February 8, 2005.
 {¶ 12} "The court further finds that Movant, mother failed to make a prima facie case within her written motion regarding meritorious defense to the underlying action for permanent custody, which is an essential element to prevail on a Civ.R. 60(B) motion * * *.
 {¶ 13} "The court further finds that after hearing evidence on the motion, Movant, mother failed to meet her burden to make a prima facie case regarding her meritorious defense. Specifically, Movant mother has failed to offer any relevant evidence or argument in opposition to the trial court's findings relating to R.C. 2151.414(B)(1)(d) or to the best interest determination pursuant to R.C. 2151.414(D). Moreover, Movant mother conceded that, at the time of the permanent custody trial, she was incarcerated, had not completed drug treatment, had not completed parenting, did not have employment, and was not in a position to provide care for the children in question."
 {¶ 14} The mother now appeals and sets forth two assignments of error for our review, which will be addressed out of order.
 {¶ 15} "II. The trial court lacked jurisdiction to issue an order of permanent custody as it did not provide reasonable notice to appellant of the permanent custody hearing."
 {¶ 16} In this assignment of error, the mother asserts that the trial court's grant of permanent custody to CCDCFS should be reversed because she was not properly served with a copy of the motion for permanent custody. CCDCFS contends that all service issues were properly and lawfully resolved prior to trial. The issue here is whether service was properly perfected on the mother prior to the grant of permanent custody.
 {¶ 17} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children.Santosky v. Kramer (1982), 455 U.S. 745. Consequently, when the State seeks to terminate parental custody, parents are entitled to due process guarantees under the Fourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself. Id.
 {¶ 18} Ohio has incorporated these due process requirements into the statutes and rules governing juvenile adjudications and dispositions. R.C. 2151.414(A), governing permanent custody hearings, provides that all parties to the action must be given notice of the filing of the motion for permanent custody and of the hearing. R.C. 2151.29 provides that notice of a permanent custody motion and hearing may be made personally, by certified mail, or by publication in the event that a person to be served cannot be located through reasonable efforts.
 {¶ 19} The jurisdiction of the Juvenile Court does not attach until proper notice of the proceedings has been provided to the parties. In re Cowling (1991), 72 Ohio App.3d 499, 502; In reMiller (1986), 33 Ohio App.3d 224, 226; In re Frinzl (1949),152 Ohio St. 164, 177. Parents are necessary parties to any proceeding concerning a child in Juvenile Court and must be served. In re Sky Jones (Nov. 22, 2000), Cuyahoga App. No. 76533; In re Ware (July 17, 1980), Cuyahoga App. No. 40983. Unless notice is given to the parents, a judgment of commitment rendered in such proceeding is void. Maryhew v. Yova (1984),11 Ohio St.3d 154, 156-157; O.B. Corp. v. Cordell (1988),47 Ohio App.3d 170, 171.
 {¶ 20} Here, the record shows that notice of the permanent custody hearing was successfully served upon the mother. First, the record includes certified mail receipts demonstrating that she was served.[2] Second, and more important, the mother acknowledged receipt of the summons for the February 22, 2005 permanent custody hearing. Accordingly, we find that the mother received proper notice and the trial court had jurisdiction to render a decision.
 {¶ 21} The mother asserts, without a separate assignment of error, that her due process rights were violated because she was incarcerated and therefore unable to attend the permanent custody hearing. Essentially, the mother asserts that she was not given "an opportunity to be heard."
 {¶ 22} Ohio courts have applied a balancing test to determine whether a parent's due due process rights are violated when the court proceeds with a hearing on a permanent custody motion without the parent's presence. Specifically, a court should balance the following factors: "(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural safeguards." In re Sprague (1996),113 Ohio App.3d 274, 276. The burden remains on the incarcerated individual to keep the trial court advised of any changes and to follow the instructions located on the subpoena, which include obtaining counsel for the hearing. See Lundstrom v. Lundstrom,
Geauga App. No. 2001-G-2381, 2002-Ohio-7127.
 {¶ 23} Here, the record indicates that the mother sent the trial judge a letter on March 7, 2005 indicating that she was transported from the workhouse to the Justice Center on the day of the hearing but that "no one came and picked [her] up" for the hearing at Juvenile Court. Our review of the record does not support this allegation. There is no record of any such transport order. Indeed, apart from the mother's own self-serving statements, there is simply no evidence in the record that she informed anyone prior to the permanent custody hearing of her wish to be transported from the jail in order to be present at the hearing. The mother's failure to take any reasonable measure left the court with no option but to proceed with the hearing. The permanent custody hearing provided an opportunity for the mother to be heard. It was her own actions, rather than those of the State, that prevented her from being heard. See In re Davis
(May 17, 2000), Summit App. No. 19636 (father not denied due process where, despite notification that his parental rights might be terminated, he did not ask to be transported to the hearing, did not ask to be deposed in anticipation of the hearing, did not communicate his whereabouts to his attorney, and did not attend the hearing).
 {¶ 24} Nonetheless, even assuming that the mother had requested a transfer but was not allowed to be present, we still find that her due process rights were not violated. The evidence demonstrates that the mother would not have been able to present any relevant evidence at the hearing as to the issue of whether or not she could be reunified with her children within a reasonable time. At the time of the permanent custody hearing she was incarcerated, had not completed drug treatment, had not completed parenting, was not employed, and was not prepared to provide a home for her children. Accordingly, we find that the mother's due process rights were not violated when the trial court proceeded in her absence.
 {¶ 25} Assignment of Error II overruled.
 {¶ 26} "I. The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence."
 {¶ 27} In this assignment of error, the mother contends that the trial court erred when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue presented here concerns the permanent custody of the children.
 {¶ 28} In considering an award of permanent custody, the court must first determine, by clear and convincing evidence, whether it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal, secure, permanent placement.
 {¶ 29} Here, the record reveals that the children are doing very well in their respective placements. The paternal grandmother has expressed an interest in adopting C.P. and a maternal cousin is interested in adopting D.P. and T.P. In addition, the guardian ad litem recommended that permanent custody be granted. Accordingly, there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
 {¶ 30} In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 {¶ 31} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 32} "* * *
 {¶ 33} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 34} Here, the trial court enumerated R.C. 2151.414(E)(1) and (4) as applicable to the children. First, the trial court found that the mother had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children. The evidence at trial showed that the children have been living in other placements since August and September 2003. Other than one visit in November 2004, there was no evidence that the mother visited with her children during this time. Indeed, at the time of trial, the mother was incarcerated. The father of D.P. and T.P. is deceased and the father of C.P. apparently agrees that his child should remain with his mother, the child's grandmother.
 {¶ 35} Next, the trial court found that the mother had failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. Specifically, the court found that the mother failed to comply with the case plan. At the time of the permanent custody hearing she was incarcerated, had not completed drug treatment, had not completed parenting, was not employed, and was not prepared to provide a home for her children. Accordingly, the trial court's determination that the children could not be placed with the mother within a reasonable time is supported by clear and convincing and convincing evidence.
 {¶ 36} In addition to the above, the trial court also found that the children had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. By making this finding, the trial court was not required to make further findings before proceeding to a best interest determination. See R.C. 2151.414(B)(1)(d); In re M.H.,
Cuyahoga App. No. 80620, 2002-Ohio-2968.
 {¶ 37} We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, the mother's first assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for these appeals.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Rocco, J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy.
[2] Summons by certified mail was sent to the mother on January 26, 2005 as to C.P. Summons by certified mail as to D.P. and T.P. on February 4, 2005.