[Cite as *In re J.G.*, 2014-Ohio-2652.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100681

# IN RE: J.G.
# A Minor Child

[Appeal by M.G., Mother]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 13909890

BEFORE: McCormack, J., E.A. Gallagher, P.J., and Kilbane, J.

RELEASED AND JOURNALIZED: June 19, 2014

**ATTORNEYS FOR APPELLANT**

Anita Barthol Staley
7327 Center Street
Mentor, OH 44060

Eileen Noon Miller
Law Offices of Eileen Noon Miller, L.L.C.
P.O. Box 1681
Mentor, OH 44060


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Kara L. Brown
Assistant County Prosecutor
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, OH 44144

TIM McCORMACK, J.:

{¶1} Appellant, M.G. ("Mother" or "M.G."), appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that granted permanent custody of the minor child, J.G., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency"). As mandated by the statute, the relevant analysis in a permanent custody matter is the best interest of the child. After a careful review of the record, we find that clear and convincing evidence supports the trial court's determination that granting permanent custody to the agency is in the best interest of J.G. We therefore affirm its decision.

## Procedural History

{¶2} On July 11, 2013, CCDCFS filed a complaint for dependency and permanent custody concerning minor child, J.G., and a motion for pre-dispositional temporary custody. That same day, an emergency hearing was held, during which the agency received temporary custody of the child. Mother was present at the emergency hearing, and she completed a waiver of service of summons of the complaint and motion for temporary custody, which contained a statement that she voluntarily attended the hearing and she was represented by counsel.

{¶3} On July 16, 2013, Mother was issued a service of summons by certified mail, which included a notification of the next pretrial date of August 13, 2013. On July 26, 2013, the service of summons was returned "not deliverable as addressed." Subsequently, an adjudicatory hearing was scheduled for September 6, 2013. The

hearing was then continued until October 15, 2013. Notice of the new hearing date was served upon Mother by publication on September 17, 2013 and returned on September 25, 2013.

**{¶4}** On October 15, 2013, the court held an adjudicatory hearing. Present for the hearing were CCDCFS social workers, Latrice Miller and Andrea Funches-Jemison; Mother's guardian ad litem, Tyrone Fazio; and the child's guardian ad litem, James Skelton. Also present were Mother's attorney and the prosecuting attorney. Mother was not present for the hearing.

**{¶5}** During this hearing, the court found J.G. to be a dependent child. Thereafter, the parties agreed to proceed directly to the dispositional hearing. Counsel for Mother indicated that she had no position on disposition because she had been unable to contact Mother. Upon hearing the evidence on disposition, the court found J.G. to be abandoned and determined that permanent custody would be in the best interest of the child.

### Substantive Facts

**{¶6}** CCDCFS received this case in July 2013, upon the birth of J.G. At the time of J.G.'s birth, Mother was a patient in a psychiatric unit at MetroHealth Hospital. She was being treated for anxiety, depression, bipolar disorder, and panic attacks. CCDCFS received a referral for neglect, the basis for which was that Mother had tested positive for PCP and cocaine, and she admitted to alcohol use during her pregnancy.

**{¶7}** At the adjudicatory hearing, social worker, Latrice Miller, testified that she investigated the referral. Upon her investigation, Miller learned from Mother that she used drugs during the pregnancy and used alcohol daily. While Mother claimed that she did not know where the cocaine had come from, she did not deny using cocaine or PCP.

**{¶8}** After the child's birth, the agency conducted a safety conference in order to discuss the safety and well being of the child and to discuss plans for discharge. Both Mother and her mental health worker attended the conference. During this conference, Mother reported again that she had been using drugs during her pregnancy and she was homeless. Mother stated that she had no place to live and she had no provisions for the child. The mental health worker advised that Mother had been living in a park in a tent, with a friend, prior to her hospitalization. Mother was not receiving any mental health medication. Mother also advised Miller that she previously had two children who were removed from her care in New York and were adopted. When asked about J.G.'s father, Mother reported only that his name is Vincent. Miller learned from the mental health case manager that the father is also homeless and she did not know his whereabouts. Miller testified that the agency had attempted to contact the father through information received through Mother, the hospital staff, and agency records to no avail. To the best of Miller's knowledge, the father had made no contact with the child, communicated with the child, or established paternity.

**{¶9}** As a result of the safety conference, the decision was made to admit Mother to a crisis center, where she would have maintained a residence. Mother left after having stayed only one day.

**{¶10}** Following the hearing, the court adjudicated the child to be a dependent child. The court then inquired of disposition, to which Mother's counsel replied that she had no position on disposition because she had not been able to contact her client. Thereafter, all parties agreed to proceed with disposition.

**{¶11}** CCDCFS's ongoing social worker, Andrea Funches-Jemison, testified on behalf of the agency for the disposition. Funches-Jemison testified that she was assigned the case in September 2013. She stated that J.G. was placed in foster care in an adoptive home, which remains the only home he has ever known.

**{¶12}** Funches-Jemison also testified that there is a case plan for Mother, which included substance abuse services, mental health services, basic needs for the child, and a plan to establish the child's paternity. She stated that these services were offered to Mother while she was hospitalized and she could have begun services immediately upon her discharge. She has not been able to offer any services, however, or schedule visitation with the child, because Mother left the crisis center after one day and the agency has not been able to locate Mother. The social worker testified that she has attempted to contact Mother through her mental health worker and accessing legal systems, and she provided Mother with her business card and phone number in order that

Mother may contact her. Mother had not contacted Funches-Jemison, and to the best of her knowledge, Mother had not had any contact with the agency or hospital personnel since she left the crisis center. Funches-Jemison testified that if Mother were available, she would offer Mother psychiatric and psychological counseling.

{¶13} The ongoing social worker maintained that Mother's needs have not changed since the filing of the original complaint. To the best of Funches-Jemison's knowledge, Mother remains homeless, is not obtaining basic needs for herself, has no source of income, and has not established paternity. Funches-Jemison had attempted on her own to locate the child's father by searching the state registry and hospital and agency records to no avail. Funches-Jemison further provided that a reasonable amount of time had passed for Mother to begin services because those services were offered to Mother while she was in the hospital during the child's birth, and they have remained available since that time. In her opinion, placement in the agency's custody is in the child's best interest.

{¶14} J.G.'s guardian ad litem, James Skelton, recommended permanent custody to the agency, testifying that permanent custody would be in the best interest of the child.

{¶15} Upon hearing the evidence and the recommendation of the guardian ad litem, the court found the child abandoned and granted permanent custody of J.G. to CCDCFS.

**{¶16}** Mother appeals from the court's decision granting permanent custody of J.G. to the agency and raises four assignments of error.

## Assignments of Error

I. The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence.

II. The trial court erred in proceeding immediately to disposition.

III. The trial court erred by not determining whether notice requirements had been met before proceeding to adjudication.

IV. [Mother's] due process rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated by ineffective assistance of counsel.

## Notice Requirements

**{¶17}** For ease of discussion, we will address M.G.'s assignments of error out of order. In Mother's third assignment of error, she argues that the trial court erred by not determining whether notice requirements had been met prior to proceeding with the adjudicatory hearing.

**{¶18}** It is well established that juvenile proceedings must comply with due process requirements, which include that of proper written notice. *In re Taylor*, 8th Dist. Cuyahoga No. 76429, 2000 Ohio App. LEXIS 2476, * 7 (June 8, 2000), citing *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). And the juvenile court has no

jurisdiction until notice of the proceedings has been provided to the parties. *In re D.P.*, 8th Dist. Cuyahoga Nos. 86271, 86272, 2006-Ohio-937, ¶ 19; *In re Miller*, 33 Ohio App.3d 224, 515 N.E.2d 635 (8th Dist.1986).

{¶19} Juv.R. 29 governs adjudicatory hearings before a juvenile court and requires the court to perform certain duties at the beginning of a hearing. The rule states that the court must "[a]scertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance." Juv.R. 29(B)(1). The purpose of Juv.R. 29(B) is to provide a "checklist" to aid the court in determining whether the parties have been afforded due process requirements. *In re Shepherd*, 4th Dist. Highland No. 00CA12, 2001-Ohio-2499. Specifically, Juv.R. 29(B)(1), (3), and (4) address whether the parties have been notified and what the court should do in the event that they were not notified. *Id.* In addressing the notice requirements of Juv.R. 29, we review the record for substantial compliance. *In re Clark*, 141 Ohio App.3d 55, 59, 2001-Ohio-4126, 749 N.E.2d 833 (8th Dist.); *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177 (stating that most courts of appeals have held that only substantial compliance with Juv.R. 29 is needed). "The issue is not whether the judge strictly complied with rote, but whether the parties adequately understood their rights * * *." *In re Clark* at 59.

{¶20} Here, the record reflects that Mother appeared at an emergency hearing for predispositional temporary custody, where she received a copy of the complaint and

signed a waiver of service of summons. The waiver, signed by Mother and dated July 11, 2013, stated as follows:

> I, [M.G.], mother of [J.G.], hereby waive service of summons of me as a parent, regarding the complaint alleging the child to be dependent and requesting a disposition of permanent custody, * * *. I hereby voluntarily enter my appearance in the matter on the merits thereof. I have been given the opportunity to engage legal counsel and am presently represented by counsel.

{¶21} The record also shows that on July 16, 2013, Mother was issued a service of summons by certified mail, which included a notification of the next pretrial date of August 13, 2013. On July 26, 2013, the service of summons was returned "not deliverable as addressed." Subsequently, an adjudicatory hearing was scheduled for September 6, 2013, which was then continued again until October 15, 2013, presumably due to the inability to locate Mother. Finally, the record shows that notice of the new hearing date was served upon Mother by publication in the Daily Legal News on September 17, 2013, and returned on September 25, 2013. The summons, which included M.G.'s last known address, advised that a permanent custody hearing would be held on October 15, 2013, that she was entitled to counsel at the hearing, and it informed her of the consequences of the hearing.

{¶22} The record further reflects that Mother voluntarily left the crisis center one day after her admission. There is no evidence that M.G. ever attempted to contact the agency after she left or communicated her whereabouts to the agency, despite having contact information for the social worker. At the adjudicatory hearing, the magistrate noted that Mother was not present and her counsel advised the court that she "[has] not been able to contact [her] client." To the best of the agency's knowledge, no one has ever visited the child, communicated with the child, or established paternity.[1]

{¶23} In light of the foregoing, we find that the record supports that M.G. was properly notified of the adjudicatory hearing. While the trial court did not verbally recount the Juv.R. 29(B) notice requirements at the hearing, the court presumably reviewed the ample evidence contained in the record and ascertained that service of notice of the hearing was complete. Mother was therefore not prejudiced by the court's failure to strictly comply with Juv.R. 29(B)(1). *See In re Flanagan*, 3d Dist. Seneca No. 13-97-42, 1998 Ohio App. LEXIS 1813 (Apr. 22, 1998). In this case, it was not the alleged failure to notify Mother of the permanent custody hearing that caused M.G.'s failure to appear. Rather, it was her own actions in voluntarily leaving her last known residence and failing to communicate with her attorney or social worker that resulted in her absence from the hearing.

---

[1] The record shows that J.G.'s father is known only by "Vincent" and he is also homeless. The agency attempted service of the summons upon Vincent by publication, which was also returned.

**{¶24}** M.G.'s third assignment of error is overruled.

## Dispositional Hearing

**{¶25}** In her second assignment of error, M.G. contends that the trial court erred in proceeding immediately to disposition following the adjudication.

**{¶26}** R.C. 2151.35 expressly allows the trial court to proceed immediately to the dispositional hearing after the adjudicatory hearing in a complaint for custody provided the parties received the proper notice:

> If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing.

R.C. 2151.35(B)(1).

**{¶27}** Similarly, Juv.R. 34(A), which governs the manner in which dispositional hearings are held on a complaint for custody, provides as follows:

> The dispositional hearing for an adjudicated abused, neglected, or dependent child shall be held at least one day but not more than thirty days after the adjudicatory hearing is held. The dispositional hearing may be held

immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing and all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing.

{¶28} Although the language in Juv.R. 34(A) essentially mirrors the language contained in the statute, Juv.R. 34(A) also requires that the parties consent to proceed immediately to dispositional hearing. *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, 894 N.E.2d 364, ¶ 23 (8th Dist.).

{¶29} Here, as previously discussed, Mother was served all documents required for the dispositional hearing prior to the adjudicatory hearing. The record shows that M.G. received a copy of the complaint for dependency and permanent custody at the predispositional hearing, during which time she signed a waiver of service of summons. She was also later issued a service of summons by certified mail and by publication. Additionally, M.G.'s counsel consented to the immediate dispositional hearing. We therefore find that the trial court did not err in holding the dispositional hearing immediately after the adjudicatory hearing in this case.

{¶30} M.G.'s second assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶31} In her fourth assignment of error, M.G. argues that her attorney was ineffective in allowing the trial court to proceed directly to disposition. She claims that

the dispositional hearing should not have taken place immediately after the adjudication and her counsel had no authority to consent to the immediate disposition of the case.

**{¶32}** In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) his counsel was deficient in some aspect of his representation, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶33}** The first element requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. It necessarily requires that when a defendant complains of the ineffectiveness of counsel's assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

**{¶34}** Regarding the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373, citing *Strickland* at 694. Moreover, a defendant's failure to satisfy one element of the *Strickland* test negates the court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

**{¶35}** Based upon our previous discussion, we determined that the trial court did not err in holding the dispositional hearing immediately after the adjudicatory hearing where Mother received the documents required for the dispositional hearing and she consented to the hearing, through her counsel. *See* Juv.R. 34(A); R.C. 2151.35(B)(1). Trial counsel's decision to proceed immediately to disposition was arguably a trial tactic, and we do not second guess counsel's decision. "[T]he reasonableness of trial counsel's performance must be examined in light of the limitations that the [mother's] own behavior placed on counsel's ability to represent [her]." *In re N.H.*, 9th Dist. Summit No. 24355, 2008-Ohio-6617, ¶ 28, citing *Strickland* at 691. The record shows that M.G. voluntarily left the residence secured for her and she failed to maintain communication with anyone involved in the permanent custody of her infant child, including her own attorney. By trial counsel's own admission, she had not had been able to contact her client. M.G. has therefore not demonstrated that her attorney's performance in agreeing to proceed directly to disposition fell below an objective standard of reasonableness.

**{¶36}** Additionally, even if Mother can show that her attorney's consent was somehow deficient, Mother has failed to demonstrate how the outcome of the permanent custody would have been different had the dispositional hearing been delayed one day, or even 30 days. The record shows that Mother did not participate in any case plan, she did not communicate or visit with the child or anyone with the agency at any time after she left the crisis center, and her trial counsel had been unable to locate her. M.G. has failed

to show how these facts would have changed had the dispositional hearing been held on a different day.   As such, we do not find M.G.'s counsel to be ineffective.

{¶37} M.G.'s fourth assignment of error is overruled.

## Permanent Custody

{¶38} In her first assignment of error, Mother argues that the trial court erred in awarding permanent custody to CCDCFS.   She claims that (1) the decision was in error because the court failed to determine whether notice requirements had been met and because the court held the dispositional hearing immediately after the adjudicatory hearing; and (2) the decision was against the weight of the evidence.   To the extent Mother is arguing error in the notice of the hearing and the manner in which the hearing was held, we previously determined there is no merit to this argument.   We address the remainder of Mother's argument below.

{¶39} We begin with the recognition that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).   "The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.   "All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation." *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996).   This court has also emphasized that the "termination of the rights of a

birth parent is an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. "The purpose of the termination of parental rights statutes is to facilitate adoption and to make a more stable life for dependent children." *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, *5 (Aug. 1, 1986).

{¶40} R.C. 2151.414 provides guidelines a trial court must follow in deciding a motion for permanent custody. R.C. 2151.414(A) mandates that the trial court schedule a hearing and provide notice to all the parties to the action and to the child's guardian ad litem upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶41} The statute sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. 2151.414(B). First, it authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the four factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a)-(d).

**{¶42}** In the event that R.C. 2151.414(B)(1)(a) applies, and the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents, a trial court must consider the factors outlined in R.C. 2151.414(E). *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14. The presence of only one factor will support the court's finding that the child cannot be reunified with the parent within a reasonable time. *Id.* The relevant factors include the following:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this

state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

\* \* \*

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶43}** For the purposes of this statute, "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 10. A trial court's finding of abandonment under R.C. 2151.414(B)(1)(b) will satisfy the first prong of the permanent custody test, thus allowing the court to move on to the second prong of considering whether the grant of permanent custody to the agency is in the best interest of the child. *See In re Cravens*, 3d Dist. Defiance No. 4-03-48, 2004-Ohio-2356, ¶ 25; *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 72 (stating that only one of the four factors must be present in order to satisfy the first prong of the permanent custody analysis).

**{¶44}** If any of the factors outlined in R.C. 2151.414(B)(1)(a)-(d) exists, the trial court proceeds to the second part of the analysis: whether, by clear and convincing evidence, it is in the best interests of the child to grant permanent custody to the agency.

**{¶45}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates that the juvenile court consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶46}** R.C. 2151.414 requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d), and (2) an award of permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481

N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. *In re Parsons*, 9th Dist. Lorain No. 97CA006662 and 97CA006663, 1997 Ohio App. LEXIS 5141 (Nov. 12, 1997).

**{¶47}** As for our own role on appeal from the trial court's decision, we are cognizant that a juvenile court's termination of parental rights and award of permanent custody to an agency is not reversed unless the judgment is not supported by clear and convincing evidence. *In re: Dylan C*, 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist.1997).

**{¶48}** Our review of the record in this case shows that the trial court's decision to award permanent custody of J.G. to the agency was supported by clear and convincing evidence.

**{¶49}** First, the record fully supports the trial court's initial determination that Mother abandoned her infant child, thus satisfying the first prong of the permanent custody analysis. The record shows that Mother voluntarily left the crisis center — a home that had been secured on her behalf —after only one day. There was no evidence that she ever returned. She failed to maintain contact with anyone associated with her case, including her social worker, hospital staff, and her attorney. She made no efforts to

communicate with or visit her child from the time she left the crisis center. And more than 90 days had passed since she last had any contact with her child.

{¶50} Further, Mother failed to complete any part of her case plan. She did not receive mental health services, such as psychological and psychiatric counseling, treatment for substance abuse, basic needs services, or assistance in establishing paternity. The social worker testified that a reasonable amount of time had passed in order for M.G. to receive the case plan services. The services were originally offered to her upon the birth of her child in July 2013, and they remained available to her, up to and including the hearing in October 2013. Additionally, there is no evidence that the alleged father has ever communicated with the child, visited the child, or established paternity.

{¶51} In turning to the second prong of the permanent custody analysis, we find that there was clear and convincing evidence to support the trial court's determination that awarding permanent custody to CCDCFS was in the best interest of the child.

{¶52} Initially, we note that the record shows that Mother has demonstrated a complete lack of commitment to her child. And in addition to the child's abandonment as outlined above, the record shows that other relevant factors apply to the court's best interest analysis. Mother is unwilling or unable to provide food, clothing, shelter, and other basic necessities for the child or herself, and she has no source of income. The record shows that she suffers from substance abuse and mental health issues. She has not sought treatment through her case plan. Mother's behavior in not seeking treatment

demonstrates that she has failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed from her care. The record also shows that she was homeless at the time her child was born. She likely remains homeless.

{¶53} Additionally, the record shows that Mother reported that she had her parental rights involuntarily terminated with respect to two other children while she was living in New York. Mother also reported that those children have been adopted.

{¶54} The social worker testified that in her opinion, the circumstances in this case had not changed and the concerns of substance abuse, mental health, and the need for the basic needs were still present. The child had been placed in an adoptive home, which is the only home the child has known. The guardian ad litem opined that permanent custody was in the best interest of the child.

{¶55} In light of the foregoing, we find that the trial court considered the relevant statutory factors. We further find that the trial court's determination that the child was abandoned and permanent custody with CCDCFS was in the best interest of the child was supported by clear and convincing evidence.

{¶56} M.G.'s first assignment of error is overruled.

{¶57} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR