[Cite as *In re K.C.*, 2024-Ohio-5269.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    K.C. and
    R.C.


DEPENDENT CHILDREN

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case Nos. 24 COA 016
          24 COA 017

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from Court of Common Pleas, Juvenile Division, Case Nos. 20183061 and 20183062 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 4, 2024 |

APPEARANCES:

For Appellee

CHRISTOPHER R. TUNNELL
PROSECUTING ATTORNEY
JOSHUA T. ASPIN
ASSISTANT PROSECUTOR
110 Cottage Street, Third Floor
Ashland, Ohio 44805

For Appellant-Father

JOSEPH P. KEARNS, JR.
MASON, MASON & KEARNS
P.O. Box 345
153 West Main Street
Ashland, Ohio 44805

*Wise, J.*

{¶1}    Appellant-Father T.C. appeals the March 25, 2024, Decision and Judgment Order entered by the Ashland County Court of Common Pleas, Juvenile Division, which granted permanent custody of minor children K.C. and R.C. to the Ashland County Department of Job and Family Services.

{¶2}    Appellee Ashland County Job and Family Services has not filed a brief or otherwise appeared in this appeal.

## STATEMENT OF THE FACTS AND CASE

{¶3}    Appellant-Father T.C. and Mother P.A. are the biological parents of minor children K.C. (DOB 06/17/2016) and R.C. (DOB 06/07/2018).

{¶4}    On December 11, 2018, Ashland County Department of Job and Family Services filed a Complaint for Dependency and Neglect as to both of the minor children. The Court held a timely Shelter Care hearing and found the removal of the minor children to be proper. The minor children were placed in the Temporary Custody of the Ashland County Department of Job and Family Services (ACDJFS) pursuant to the Shelter Care Order.

{¶5}    The allegations leading to the Complaint arose from the parents abuse of drugs and trafficking in drugs. On December 11, 2018, drugs were found in the home and both parents were arrested. Both of the minor children tested positive for cocaine, as found through hair follicle testing. The children were removed from the home.

{¶6}    Appellant-Father was charged in a nine-count Indictment and plead guilty to four of the counts, including Aggravated Trafficking, Trafficking, Weapons Under

Disability, and Child Endangering. (T. at 35). He received a sentence of 42 months and was released in August, 2022. (T. at 36).

**{¶7}** Mother P.A. was also charged in a nine-count Indictment from the same incident, alleging Complicity to the same charges as Appellant-Father, as well as Child Endangering. (T. at 42). She plead guilty to three counts, Complicity to Aggravated Trafficking, Complicity to Trafficking, and Child Endangering and was sentenced to 120 days house arrest. (T. at 44). She was granted Judicial Release in March, 2020, but violated her Judicial Release Community Control in March, 2022, and her remaining days were reinstated in June, 2022, with credit for time served. (T. at 47). She was released from incarceration on October 6, 2022. (T. at 71).

**{¶8}** Both children were adjudicated Neglected pursuant to R.C. §2151.03(A)(2) and Dependent pursuant to R.C. §2151.04(C).

**{¶9}** On February 21, 2019, an initial case plan was filed with the trial court. It provided for mental health services, substance abuse services, parent education and case management for the parents of the minor children.

**{¶10}** On March 13, 2019, the court held a Dispositional hearing and issued an Opinion and Judgment Entry. (See JE filed March 25, 2019). The Dispositional Order placed both children in the Temporary Custody of the Ashland County Department of Job and Family Services.

**{¶11}** The court issued written decisions on both the Adjudication and Disposition.

**{¶12}** Updated case plans were filed on December 5, 2019, December 13, 2019 and April 8, 2020, December 24, 2020, February 12, 2021, and October 15, 2021. The updated case plans did not change service requirements or goals but instead dealt with

removing or adding a parent to the case plan due to incarceration or changing visitation provisions.

{¶13} On April 24, 2020, the Ashland County Department of Job and Family Services filed a Motion to Modify Disposition. The Agency was requesting that the children be placed in the Legal Custody of Jessica Bennett and Phillip Bennett. The Bennetts are the children's Aunt and Uncle, and the children had been placed with them immediately after their original removal.

{¶14} On September 10, 2020, a Guardian Ad Litem report was filed.

{¶15} The Magistrate held a lengthy hearing on the Motion to Modify Disposition filed by the Agency and issued its Decision on July 2, 2021. The Decision granted the Ashland County Department of Job and Family Services' Motion and Ordered that the children be placed in the Legal Custody of Jessica Bennett and Phillip Bennett.

{¶16} Mother P.A. filed timely objections to the Magistrate's Decision. However, before the court could rule on the Objections, a Notice of Change of Circumstances was filed notifying the court that Jessica Bennett and Phillip Bennett were no longer willing to accept Legal Custody of the minor children.

{¶17} The Ashland County Department of Job and Family Services changed the children's placement to the home of their maternal great-grandfather, Michael "Mick" McPherran.

{¶18} On April 6, 2022, another updated case plan was filed with the court changing the children's placement.

{¶19} On May 3, 2022, Mother P.A filed a Motion for Reunification with the children.

**{¶20}** On May 6, 2022, the Magistrate issued an Amended Decision and Judgment Entry keeping the minor children in the Temporary Custody of the Ashland County Department of Job and Family Services. Mother P.A. was granted parenting time. Appellant-Father was not granted parenting time.

**{¶21}** On July 7, 2022, the Ashland County Department of Job and Family Services filed a Motion for Permanent Custody of the minor children.

**{¶22}** On August 11, 2022, Michael "Mick" McPherran, the maternal great-grandfather of the minor children, filed a Motion to Intervene and on August 16, 2022, he filed a Motion for Legal Custody of the minor children.

**{¶23}** On September 6, 2022, the court granted Michael "Mick" McPherran's Motion to Intervene.

**{¶24}** On October 8, 2022, another updated Case Plan was filed with the court. It dealt with Mother's visitation based on her recent release from prison. Mother objected to this updated case plan and proposed a case plan with more expanded visitation.

**{¶25}** On November 10, 2022, Mother P.A. filed a Motion for Reunification with the children and a Motion for Temporary Orders.

**{¶26}** On December 2, 2022, the Guardian Ad Litem filed a report with the court and on December 21, 2022, the Guardian Ad Litem filed an additional report with the court.

**{¶27}** On December 7, 2022, and December 22, 2022, the trial court held an evidentiary hearing on the Motions of the Ashland County Department of Job and Family Services Motion for Permanent Custody, Mother P.A.'s motion for reunification with the minor children, and Mr. McPherran's motion for Legal Custody of the minor children.

{¶28} An incident occurred which caused the Ashland County Department of Job and Family Services to file an Emergency Case Plan on May 17, 2023. This updated case plan changed the placement of the children who were removed from the home of Mr. McPherran and placed in a foster home.

{¶29} On May 24, 2023, Objections to the emergency case plan were filed and the court Ordered and held a further hearing.

{¶30} At that hearing, a witness testified that there had been an allegation of the children being touched inappropriately at the home of Mr. McPherran, and that a police investigation into that matter had commenced. Subsequently, that police investigation was closed because the allegations were not substantiated.

{¶31} By Decision and Judgment Order filed March 25, 2024, the trial court granted permanent custody of the children to the Agency.

{¶32} It is from this decision Appellant-Father appeals, assigning the following error:

**ASSIGNMENT OF ERROR**

{¶33} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PERMANENT CUSTODY OF THE CHILD TO THE ASHLAND COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶34} This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

**I.**

**{¶35}** In his sole assignment of error, Appellant-Father maintains the trial court's decision awarding permanent custody of the minor children to Ashland County DJFS was against the manifest weight of the evidence. We disagree.

**{¶36}** More specifically, Appellant in his brief argues that the trial court should have granted legal custody to Michael "Mick" McPherran, the children's maternal great-grandfather.

**{¶37}** To the extent that Appellant-Father argues that the trial court erred by failing to place the children in the legal custody of Mr. McPherran, the general rule is that " '[a] parent has no standing to assert that the court abused its discretion by failing to give [McPherran] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper.' " *In re L.W.* at ¶ 23, quoting *In re S.G.* 2016-Ohio-8403, ¶ 52 (3rd Dist.), citing *In re Pittman*, 2002-Ohio-2208, ¶ 70 (9th Dist.). *Accord In re N.M.*, 2018-Ohio-1100, ¶ 23 (8th Dist.). If permanent custody to the Agency is in the children's best interests, legal custody to a relative necessarily is not. *In re V.C.* 2015-Ohio-4991, ¶ 61 (8th Dist.) citing *In re M.S.*, 2015-Ohio-1028, ¶ 11 (8th Dist.).

**{¶38}** Accordingly, Appellant-Father's challenge to the trial court's judgment granting Ashland County Department of Job and Family Services permanent custody is limited to whether the trial court improperly terminated his parental rights. With these principles in mind, we will proceed to review the trial court's judgment awarding permanent custody of the children to ACDCFS and terminating Appellant-Father's parental rights.

**Standard of Review**

{¶39}   Parents have a constitutionally protected interest in raising their children. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, 2010 WL 1500871, ¶ 15, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). That interest, however, is " 'always subject to the ultimate welfare of the child.' " *In re M.J.M.*, quoting *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, 2005 WL 615642, ¶ 7.

{¶40}  A juvenile court's termination of parental rights and award of permanent custody to an agency is not reversed unless the judgment is unsupported by clear and convincing evidence. *In re Dylan C.*, 121 Ohio App.3d 115, 121, (6th Dist.1997); *In re N.B.*, 2015-Ohio-314, ¶ 48 (8th Dist.). " 'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' " *In re T.B.*, 2014-Ohio-2051, ¶ 28 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). The evidence must be more than a preponderance, but it does not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases.

{¶41}  R.C. §2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. §2151.414(B). First, it authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply:

(a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody;

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or

(e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶42}** R.C. §2151.414(B)(1)(a)-(e). *In re J.G.*, 2014-Ohio-2652, ¶ 41 (8th Dist.).

**{¶43}** Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re L.W.*, 2017-Ohio-657, ¶ 28 (8th Dist.).

**{¶44}** Second, when any one of the above factors exists, the trial court must analyze whether, by clear and convincing evidence, it is in the best interest of the children to grant permanent custody to the agency pursuant to R.C. §2151.414(D). *Id.*

### R.C. §2151.414(B) Factors

**{¶45}** In the instant matter, Appellant-Father does not challenge the trial court's finding under the first prong that the minor children have been in the Temporary Custody of the Agency for 12 or more consecutive months of a consecutive 22-month period, with

the Permanent Custody motion being filed after more than three years had passed. The trial court therefore determined that the condition set forth in R.C. §2151.414(B)(1)(d) was satisfied.

**{¶46}** As findings under R.C. §2151.414(B)(1)(a) and R.C. §2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 2007-Ohio-5805 (5th Dist.); *In re K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.). This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458 (5th Dist.); *In re K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.).

**{¶47}** The trial court also found that R.C. §2151.414(B)(1)(b) was applicable to the children, and that due to their repeated incarcerations, both Appellant-Father and Mother had abandoned their minor children.

**{¶48}** Because Appellant-Father has not challenged the twelve of twenty-two-month finding as to the children, we need to address the best interest of the children pursuant to R.C. §2151.414(D). *Id.*

**{¶49}** Accordingly, we find that the first prong of the permanent custody analysis has been satisfied.

### *Best Interest of the Children*

**{¶50}** Appellant-Father's challenge to the trial court's judgment appears to pertain to the second R.C. §2151.414 prong. Appellant-Father argues that the trial court abused its discretion in determining that granting permanent custody to ACDCFS was in the children's best interest.

**{¶51}** Appellant contends that it was in K.C.'s and R.C.'s best interest to be placed in the legal custody of Mr. McPherran.

**{¶52}** Once the juvenile court determines that one of the factors listed in R.C. §2151.414(B)(1) applies, then the court must determine, by clear and convincing evidence, whether permanent custody is in the best interest of the child. 2016-Ohio-4870, ¶ 29 (8th Dist.).

**{¶53}** We review a trial court's determination of a child's best interest under R.C. §2151.414(D) for an abuse of discretion. *In re J.F.*, 2018-Ohio-96, ¶ 55 (8th Dist.), citing *In re D.A.*, 2010-Ohio-5618, ¶ 47 (8th Dist.). " 'A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.' " *In re J.F.*, quoting *In re N.B.*, 2015-Ohio-314, ¶ 60 (8th Dist.).

**{¶54}** In determining the best interest of a child at a permanent custody hearing, R.C. §2151.414(D)(1) mandates that the juvenile court consider all relevant factors, including the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶55}** While the trial court must consider all best-interest factors, only one of the factors enumerated in R.C. §2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights. *In re N.B.* at ¶ 53; *In re Z.T.*, 2007-Ohio-827, ¶ 56 (8th Dist.).

**{¶56}** In the instant matter, we find that the trial court considered the relevant statutory factors. The court, in its decision granting permanent custody of the children to ACDCFS, found:

The two girls have always lived together. They are very bonded and should remain together wherever they may go.

Jessica Bennett and Phillip Bennett have provided care for the minor children for the majority of their lives. They have been the parental figures for the minor children. They love the minor children and gave much thought before deciding they could not take Legal Custody. They cited the never-ending drama within the family as well as the chaos and bad decisions made by others. They noted that the girls' behaviors always changed for the worse after Mother P.A. was out of prison and visiting with the minor

children. The minor children became disrespectful and disobedient. Numerous examples were cited.

Jessica Bennett and Phillip Bennett know that if they have Legal Custody of the minor children, that the rest of the family will remain involved which they see as directly detrimental to the minor children. They reluctantly concluded that it would be in the best interests of the minor children to be away from the family.

Jessica Bennett has a good relationship with her grandfather, Michael "Mick" McPherran. She believes that Michael "Mick" McPherran can probably take care of the minor children if he, in fact, does it. The concern is that historically he allows others, including mother, P.A., and grandmother of the minor children, Megan McPherran, to participate and care for the minor children which remains a concern.

Unfortunately, the Court cannot consider Jessica Bennett and Phillip Bennett as Legal Custodians for the minor children.

After the last full hearing, the Ashland County Department of Job and Family Services had to change the minor children's placement. A home study of Michael "Mick" McPherran and his home had been completed and was approved. The children were placed with Michael "Mick" McPherran.

Unfortunately, the placement had to be changed again as discussed below. The minor children were placed in a foster home where they remain.

Throughout the long history of these cases, both mother and father have been in prison and/or otherwise incarcerated several times each.

Whenever incarcerated, they were not able to visit the minor children, care for them, or provide for them.

Their bad choices resulting in incarceration had a direct negative and detrimental impact on the minor children.

**{¶57}** The trial court then went on to find that Appellant-Father has a lengthy criminal record, a history of drug abuse, and instability. The court found that he was not available to care for or even see the minor children for three and a half years. The court also found he has had very little interaction with the minor children for the past five years, and there is no evidence of any bond between him and the minor children. Further, the court found at the time of the hearing, Appellant-Father had been arrested and was incarcerated, with federal charges pending, and that ultimately, he may face another prison sentence.

**{¶58}** As to Mother, the court found that it had been more than five years since the children had lived with her. The court also found that Appellant-Mother also has a lengthy history of criminal activity, incarceration both locally and in prison, and substance abuse. The court further found that although she denies any present relationship with Appellant-Father, they have a lengthy history together. Mother has gone to prison at least twice for having contact with Appellant-Father, when she was Ordered not to do so. The two have a dysfunctional relationship.

**{¶59}** The court further found that while Mother did make progress on the case plan, any progress was interrupted by periods of incarceration. She initially participated in parenting education; however, her provider was of the opinion that she just went through the motions and did not benefit from the program. She also

participated in substance abuse services at Ashland County Council on Alcoholism and Drug Abuse. She has been diagnosed with anxiety, depression and Post Traumatic Stress Disorder, but has not sufficiently addressed those issues. Additionally, she is currently pregnant. She has three children and is pregnant with a fourth. She does not have custody of any of the minor children.

**{¶60}** With regard to Mr. McPherran, the court found that McPherran had allowed Mother unsupervised access to the minor children putting them in a potentially dangerous environment. When confronted, Mr. McPherran was not truthful with the caseworker. The court expressed its concerns that Mr. McPherran would allow Mother to be around the minor children on a daily basis and would be allowed to care for them.

**{¶61}** The court found that the minor children had been in the temporary custody of the Agency since December 11, 2018, and had been out of their parents' home for over five years. K.C. was two-years old and R.C. was seven-months old at the time of their removal. They have never had a stable home with either parent. The court found that the children are in need of a legally secure permanent placement and that neither parent could provide that. The court also noted that both parents have been convicted of Endangering Children.

**{¶62}** The court also found that the Agency had made reasonable efforts to prevent the continued removal of the minor children from their home, including case planning, assessing the needs of the entire family and providing referrals to address those needs, providing case management, and by seeking kinship placements.

{¶63} After review, we find that the evidence supports the trial court's reliance on the factors set forth in R.C. §2151.414(D) and determination that permanent custody with ACDCFS is in the best interest of the children.

{¶64} The record contains clear and convincing evidence supporting the trial court's determination that permanent custody, rather than legal custody to Mr. McPherran, was in the children's best interest.

{¶65} Based on the foregoing analysis, we cannot say that the trial court abused its discretion in determining that permanent custody was in the children's best interest. The record reflects that the trial court considered all relevant statutory factors, and despite the willingness of Mr. McPherran to assume legal custody of the children, clear and convincing evidence supports the trial court's determination that permanent custody is in the children's best interest. Because permanent custody to ACDCFS is in the children's best interest, legal custody to Mr. McPherran necessarily is not.

{¶66} Based on the record before us, we find there was competent, credible evidence Appellant-Father failed to remedy the problems which caused the removal of the minor children from the home and that an award of permanent custody in the children's best interest was not against the manifest weight of the evidence.

**{¶67}** Appellant-Father's sole assignment of error is overruled.

**{¶68}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Ashland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P.J. and

King, J. concur

JWW/kw 1021