[Cite as *In re E.T.*, 2022-Ohio-3963.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2022-07-011 |
| E.T., et al. | : | O P I N I O N<br>11/7/2022 |
| | : | |
| | : | |
| | : | |
| | : | |


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 18719; 18720; 18721


Kirsten Knight, for appellant.

David Fierst, for appellee.

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for Preble County Children Services.

Jill E. Hittle, guardian ad litem.


**M. POWELL, P.J.**

{¶ 1} Appellant Mother appeals from the decision of the Preble County Juvenile Court awarding permanent custody of her minor children to appellee Preble County Department of Job and Family Services (PCDJFS). We find no merit in Mother's

assignment of error, so we affirm.

**Factual and Procedural Background**

{¶ 2} PCDJFS initially filed a dependency complaint in August 2019 and obtained temporary custody of Mother's three minor children. That case was dismissed due to statutory time constraints. In June 2021, PCDJFS refiled the complaint, along with a request for permanent custody of the children. At Mother's request, and after she had submitted an affidavit of indigency, the trial court appointed her counsel. The following September, the trial court filed an entry stating that PCDJFS had decided to pursue only temporary custody and terminating the appointment of Mother's counsel. The entry noted that "[t]he parents may petition the Court for reappointment of counsel anytime during the pendency of the case should they feel it is warranted. They will be required to submit a current Affidavit of Indigency with their request."

{¶ 3} PCDJFS soon changed its mind on custody. On October 11, 2021, the agency filed a motion for permanent custody of the children. The next day, the trial court scheduled an initial hearing on the motion. The scheduling entry stated that the parents have the right to counsel, including appointed counsel, and that the Juvenile Deputy Clerk should be contacted to arrange for appointment. Later that month, Mother was served with a summons, which also stated that she was entitled to court-appointed counsel.

{¶ 4} On November 9, the trial court held an initial permanent custody hearing. An entry filed by the court a few days later stated that Mother had been present at the hearing, that the court had notified her of her right to counsel and her right to be appointed counsel, and that Mother had indicated that she understood. The entry further stated that Mother had asked the court to appoint counsel for her and that the court had instructed her to complete a financial affidavit and return it within seven days. The trial court did not hear from Mother again for several months.

{¶ 5} In January 2022, a pretrial hearing was held, which Mother did not attend. The following month, on February 14, a permanent custody dispositional hearing was held. A couple of hours before the hearing, the court received a phone call from Mother's adult daughter who said that Mother was on her way to an outpatient rehabilitation facility and would not attend the hearing. After the trial court announced this at the start of the dispositional hearing, Father moved for a continuance. The court declined to continue the hearing.

{¶ 6} Two months after the dispositional hearing, the trial court received a letter from Mother saying that she had been unable to attend the hearing because she was in the hospital. Mother asserted in the letter that she should have proper representation by counsel and should be part of the permanent custody decision. But it was not until June 14, four months after the hearing, that Mother finally submitted the required affidavit of indigency.

{¶ 7} On June 17, 2022, the trial court granted PCDJFS's motion and awarded the agency permanent custody of the children.

{¶ 8} Mother appealed.

## II. Analysis

{¶ 9} The sole assignment of error alleges:

{¶ 10} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO PREBLE COUNTY CHILDREN'S SERVICES BECAUSE THE COURT FAILED TO PROVIDE COUNSEL TO MOTHER FOR THE PROCEEDING.

{¶ 11} Mother argues that the trial court should have provided her with counsel for the permanent custody proceeding.

{¶ 12} The "parent-child bond" is "extremely important and when the state attempts to permanently terminate the relationship between a parent and child, the parent '"must be

- 3 -

afforded every procedural and substantive protection the law allows."'" *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, ¶ 5, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Ohio law provides that "a parent has the right to counsel at a permanent custody hearing, including the right to appointed counsel if the parent is indigent." *Id.*, citing R.C. 2151.352 and Juv.R. 4(A). But "the parent generally must comply with certain procedures to secure counsel." *In re M.S.*, 9th Dist. Summit No. 30164, 2022-Ohio-1579, ¶ 15. "When the parent is notified about the procedures for obtaining court-appointed counsel but fails to comply with those requirements, the trial court does not err in failing to appoint counsel." *Id.*, citing *In re Careuthers*, 9th Dist. Summit No. 20272, 2001 WL 458681, *4 (May 2, 2001). *See also In re P.H.*, 11th Dist. Trumbull No. 2018-T-0093, 2019-Ohio-418, ¶ 29 (concluding that "the [trial] court did not deny [the father] counsel; [he] failed to accept counsel by not complying with the process by which counsel is appointed"); *In re T.N.*, 5th Dist. Delaware No. 19 CAF 02 0016, 2019-Ohio-2142, ¶ 20 ("Appellant's failure to request counsel prior to November 15 after receiving several notices of her right to do so, does not support her contention that her due process rights were violated."); *In re Ramsey Children*, 102 Ohio App.3d 168, 170 (5th Dist.1995) (concluding that the mother, who did not make contact with the public defender's office until her children had been adjudicated, "was not denied her statutory right to counsel * * * but was notified of her rights and did not pursue them").

{¶ 13} One of the requirements for obtaining appointed counsel is the submission of an affidavit of indigency. *In re E.T.,* 9th Dist. Summit No. 23017, 2006-Ohio-2413, ¶ 85 ("Juvenile court procedures require that one who wishes appointed counsel must complete an affidavit of indigency with the appropriate court employee."), citing R.C. 2151.314(D). It follows, then, that if a parent has been notified of the indigency-affidavit requirement but fails to timely comply, a court is not obligated to appoint counsel, and there is no denial of

the statutory right to counsel or denial of due process. *In re M.S.* at ¶ 15; *In re T.F.*, 4th Dist. Pickaway No. 07CA34, 2008-Ohio-1238; *In re E.T.* at ¶ 85 ("Where an individual has been notified of the procedures to be followed in order to obtain appointed counsel, but fails to make proper and timely application for counsel, as here, there is no denial of the effective assistance of counsel."). For example, in *In re Careuthers* the mother contended that the trial court had erred by holding an adjudicatory and then a dispositional hearing in the absence of appointed counsel. "Juvenile court procedures," said the appellate court, "require that one who wishes appointed counsel must complete an affidavit of indigency[.]" *In re Careuthers* at *3, citing R.C. 2151.314(D). The mother had failed to submit an affidavit. The record showed that before the hearings she had been notified of this requirement. She had been served with a summons stating the procedures to obtain appointed counsel, and a magistrate decision also stated the procedures. "Where the mother is notified of her rights, but fails to pursue them," said the court, "she has not been denied her statutory right to counsel." *Id.* at *4. "Therefore," the court concluded, "because [the mother] failed to comply with the established procedures, the trial court was not required to appoint counsel for her." *Id.* The case *In re T.F.* provides another relevant example. There, the father contended that the trial court had denied him his due process rights by determining the permanent custody action without his presence and without appointing counsel to represent him. The record showed that the father had been served with the motion for permanent custody and a notice of the hearing and that the summons stated how to obtain appointed counsel. "Ohio courts hold," said the appellate court, "that where a parent is provided notice of his or her 'right to counsel, but fails to pursue it, [the parent] has not been denied [the] statutory right to counsel.'" *In re T.F.* at ¶ 15, quoting *In re Williams*, 10th Dist. Franklin No. 03AP-1007, 2003-Ohio-678, ¶ 13. The father had been provided notice of his right to counsel during the proceedings, said the court, "but he never availed himself of that right."

*Id.* at ¶ 16. Therefore, the court concluded, the father "was not denied his due process right to counsel." *Id.*

{¶ 14} In the present case, the record shows that Mother knew what she needed to do to obtain court-appointed counsel. Most telling is that she had complied with the procedures and had been appointed counsel earlier in the case. Even after her first counsel's appointment was terminated, Mother was told directly and notified several times of her right to appointed counsel and the procedures that she needed to follow to obtain court-appointed counsel, including the submission of an affidavit of indigency. The first notice came in the entry terminating the original appointment of counsel. Then, after PCDJFS moved for permanent custody, and before the final permanent custody hearing, Mother was notified several more times. The scheduling entry setting the date of the initial permanent custody hearing stated that she had the right to be appointed counsel and stated who she needed to contact to arrange for appointment. And the summons served on Mother with the permanent custody motion stated that she was entitled to appointed counsel. In addition, at the initial permanent custody hearing, the trial court told Mother directly that she had the right to counsel for the proceeding and the right to be appointed counsel. When Mother asked for an appointment, the court instructed her to submit an indigency affidavit. As the trial court told it at the dispositional hearing:

> On November 9th, the mother appeared. * * * I talked to her about the need to ask for an attorney immediately if she wanted one. We were clear that her previous attorney, because I believe this was a refiled case on the more recent dependency, technically terminated at the time of that and though that she was entitled to an attorney on the motion for permanent custody, again, that was November 9th. I do not believe that we had seen mom since.

Yet, it was not until four months after the dispositional hearing that Mother finally got around to filing her affidavit. By then, it was too late. Mother asserts that she did not understand

that she had to ask for an attorney a second time. But this assertion is plainly belied by the record.

**{¶ 15}** As a final matter, though Mother does not expressly assign error to it, we briefly consider the trial court's decision not to continue the dispositional hearing. A court "may continue [a] case to enable a party to obtain counsel * * * or to be appointed counsel." R.C. 2151.353; *see also* Juv.R. 23. The trial court's decision not to do so here was not an abuse of discretion. *See State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus ("The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge.").

**{¶ 16}** At the start of the dispositional hearing, Father moved for a continuance. In response, PCDJFS pointed out that Mother had not requested a continuance and no documentation had been submitted to the court, and argued that "it's her choice whether to be here or to enter treatment at this time. And her choice not to be here is not a justification to further set out this hearing." The trial court agreed with the agency:

> * * * I'm not going to [grant a continuance] today because I just—
> this has been pending. We had service in October. It is
> February. * * *
>
> But that's not even the reason, you know, I'm declining to
> continue it. It's that it has been two-plus years. The kids need
> some closure * * *.
>
> * * * October to January was sufficient time to ask for an
> attorney, and frankly it's just a situation we've got to do the best
> we can do. And this is the best we can do.

**{¶ 17}** We note first that PCDJFS is right that Mother never sought a continuance of the dispositional hearing. When her daughter called the trial court to say that Mother would not be at the hearing, the daughter did not ask for a continuance. Nor may the telephone call be construed as a request for a continuance, because the daughter is not an attorney and may not take such legal action on Mother's behalf. *See Cleveland Bar Assn. v.*

*CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, ¶ 22 (defining the unauthorized practice of law). We recognize that Mother had a significant interest in being represented at the hearing. But it was plainly her own fault that she wasn't. Furthermore, Mother did not take the necessary steps to obtain representation for four months after the hearing. We see no abuse of discretion with the trial court's decision to proceed with the dispositional hearing.

### III. Conclusion

{¶ 18} The trial court did not deny Mother her right to counsel; Mother failed to trigger her right to appointed counsel by not complying with the appointment procedures. Mother knew that she needed to file an affidavit of indigency to obtain appointed counsel, having done so before and having been notified of the requirement numerous times. She did not comply with this requirement until late in the permanent custody proceedings, making her earlier lack of counsel her own fault. The sole assignment of error is overruled. The trial court's judgment is affirmed.

HENDRICKSON and BYRNE, JJ., concur.